SECURITIES AND EXCHANGE COM-MISSION, Plaintiff,

v.

ARVIDA CORPORATION, Arthur Vining Davis, Milton N. Weir, Carl M. Loeb, Rhoades & Company, a partnership, Stanley R. Grant, Clifford W. Michel, Dominick & Dominick, a partnership, Gardner D. Stout, Defendants.

United States District Court
S. D. New York.
Dec. 12, 1958.

Thomas G. Meeker, Washington, D. C., Gen. Counsel of Commission, Paul Windels, Jr., New York City, Regional Director of New York Regional Office, Edward Schoen, Jr., Assoc. Regional Adm'r of New York Regional Office, New York City, Joseph B. Levin, Washington, D. C., Asst. Gen. Counsel of Commission, for plaintiff.

Cahill, Gordon, Reindel & Ohl, New York City, John T. Cahill, New York City, John Monaghan, Paul W. Williams, and John Richardson, New York City, of Counsel, for defendants.

NOONAN, District Judge.

The Securities and Exchange Commission ("the Commission") having on September 22, 1958, filed a complaint alleging that the defendants were engaged and about to engage in acts and practices which constitute violations of Section 5(c) of the Securities Act of 1933, as amended, ("the Securities Act") 15 U.S.C.A. § 77e(c), and praying for preliminary and permanent injunctions pursuant to Section 20(b) of the Securities Act, 15 U.S.C.A. § 77t(b);

There having come on for hearing on September 30, 1958, the motion of the Commission for a preliminary injunction and motions of the defendants for dismissal of the Commission's complaint, or for judgment on the pleadings, or for summary judgment, and to enjoin certain proceedings instituted by the Commission against the defendants Carl M. Loeb, Rhoades & Co. ("Loeb Rhoades") and Dominick & Dominick, pursuant to Sections 15(b) and 15A of the Securities Exchange Act of 1934, as amended, 15 U.S.C.A. 78o(b) and 78o-3;

The Court having denied the motions of both the Commission and the defendants on October 20, 1958, and the Commission having thereafter ordered a private investigation in which testimony was taken on November 5, 6 and 7, 1958;

The parties having entered into a stipulation with respect to Findings of Fact, the Court adopts the Findings of Fact and Conclusions of Law herein set forth:

Findings of Fact

1. Defendant Arvida Corporation ("Arvida") was incorporated in Delaware on July 30, 1958, and it acquired certain real property in Florida, directly and indirectly, from defendant Arthur Vining Davis who at all times hereinafter described controlled Arvida and was also chairman of its board of directors.

2. Defendant Milton N. Weir is president and a director of Arvida.

3. Defendants Loeb Rhoades and Dominick & Dominick are each a partnership engaged, among other things, in the underwriting and distribution of securities to the public, and each is registered as a broker and dealer under the Securities Exchange Act of 1934.

4. Defendants Stanley R. Grant and Clifford W. Michel are general partners of Loeb Rhoades, and defendant Gardner D. Stout is a general partner of Dominick & Dominick.

5. On July 8, 1958, following a meeting of the defendants, or their representatives, at which a program was worked out contemplating the organization of Arvida, the aforementioned acquisition by Arvida of real property from Davis, and a public sale of securities by Arvida with Loeb Rhoades and Dominick & Dominick acting as underwriters, the following written statement was released to the press for publication:

"Arthur V. Davis Planning Development Of Real Estate Holdings

"Arthur Vining Davis, noted industrialist, who for many years has been accumulating real estate holdings in Southeast Florida announced today that he is entering into a new phase of his program for his Florida real estate. This new phase will emphasize planning and developing new communities and additions to existing communities for industrial, commercial, residential and recreation use. A primary objective of the program will be to attract new industry to Southeast Florida.

"Mr. Davis is organizing a new company to which he will transfer a

major portion of his land holdings, including approximately 100,000 acres of undeveloped land in Dade, Broward and Palm Beach Counties. This company, to be known as Arvida Corporation, will launch a full scale program for the orderly development of the lands. Arrangements are being made to provide a large amount of new capital to implement the program. Mr. Davis said that his new program will not affect the operation of his various business enterprises in Florida."

6. The substance of the foregoing release, or editorial comments thereon, appeared in the Miami News on July 9, 10 and 13, 1958, in the Miami Herald on July 10, 1958, and in the Fort Lauderdale Daily News on July 10, 1958.

7. On September 18, 1958, Arvida and Davis accepted the terms of an offer made jointly the previous day by Loeb Rhoades and Dominick & Dominick to participate in the public offering of approximately $27,500,000 of Arvida common stock.

8. Later the same day, Grant submitted to, and received the approval of all the defendants directly or through counsel, for the following statement, which was to be released to the press that day simultaneously in Miami, Florida by counsel for Davis and in New York for national circulation by Loeb Rhoades:

"Carl M. Loeb, Rhoades & Co.
42 Wall Street New York, 5 N. Y.

"For Release
Friday, September 19, 1958
"Arthur V. Davis Planning Multimillion Financing Of Florida Gold Coast Properties

"Arthur Vining Davis announced today that Arvida Corporation, to which he is transferring virtually all of his land and operating real estate in Dade, Broward and Palm Beach counties Florida, will be provided with $25 to $30 million of additional capital through an offering of part of its new common stock to

the public. Arvida Corporation will have assets in excess of $100 million reflecting Mr. Davis' investment in these properties over the past twelve years and the contemplated public investment.

"The public offering, scheduled for some time in the next 60 days, will be conducted through a nationwide group of investment banking firms to be headed by Carl M. Loeb, Rhoades & Co. and Dominick & Dominick, both of New York. A registration statement to be filed with the Securities and Exchange Commission is now in preparation.

"Mr. Davis is transferring to Arvida Corporation over 100,000 acres of land, more than 155 square miles, in an area of the Gold Coast extending from Delray Beach in Palm Beach County to Homestead in Dade county south of Miami. Mr. Davis began his selection of these lands as far back as 1946. Arvida Corporation will own in Delray and Boca Raton, Palm Beach county, over 6,500 acres of land, including property with approximately 7,500 feet of ocean frontage. Also included are the Boca Raton hotel and club and ten other operating properties. In Broward county, west of Fort Lauderdale and Hollywood, Arvida will own 23,000 acres of land. In Dade county, south of Miami, it will hold 72,000 acres of land, by far the largest block of privately held property in the county. The lands in Broward and Dade counties are largely undeveloped but sizable tracts of acreage are suitable for immediate use as residential and commercial sites.

"Mr. Milton N. Weir, who has been active in Mr. Davis' real estate affairs for several years, will become president of Arvida Corporation and will be responsible for the planning and execution of its future program. Mr. Davis, who will be Chairman of the Board, emphasized that it will be Arvida's primary ob-

jective to treat each parcel of its property in the manner best suited to bring forth its highest economic value through a comprehensive program of orderly and timely development. Some property will be developed immediately into residential communities, with regional shopping areas, industrial parks, utility installations and public service and recreational facilities. Much of the land in so large a holding will, of course, be held for investment and future development as the area expands. The attraction of new industry will be an essential feature of the program. In this manner Arvida may be expected to be a potent force in the further growth of Southeastern Florida bringing benefit to the citizens, communities and businesses of that region."

9. On the afternoon of September 18, 1958, reporters for the New York Herald Tribune, New York Times and Wall Street Journal were invited by Loeb Rhoades' public relations counsel to the Loeb Rhoades' offices, where they were given copies of the foregoing statement.

10. At the same time, defendant Grant, acting as spokesman for the defendants, answered certain questions of the reporters concerning the Arvida offering, including a statement as to the proposed offering price of about $10 or $11 per share, and declined to answer certain other questions, including questions as to the amount of mortgage indebtedness, the capitalization of the company, and its operating properties.

11. Subsequently on the same day defendant Loeb Rhoades, through its public relations counsel, caused copies of the press release on Loeb Rhoades' letterhead to be delivered to the offices of the United Press and the Associated Press in New York City for distribution to newspapers throughout the United States, and in addition mailed copies to the New York Journal American, the New York World-Telegram & Sun and the Journal of Commerce, for publica-

tion in the Friday, September 19, 1958 editions of those publications.

12. The substance of the last mentioned release and the information supplied orally by Grant were set forth in news stories in the New York Times, New York Herald Tribune, Wall Street Journal and in numerous news media in other cities throughout the country.

13. At the time of the foregoing events, there was no registration statement filed with the Commission pursuant to the Securities Act with respect to the common stock of Arvida.

14. Neither defendant Loeb Rhoades nor Dominick & Dominick has ever before engaged in publicity activities of this character in connection with an underwriting of securities prior to the filing of a registration statement with the Commission under the Securities Act.

15. A limited survey by plaintiff encompassing a period of less than two business days, namely, from 9 A.M. Friday, September 19, 1958 to about 3 P.M. Monday, September 22, 1958, disclosed buying interest on the part of brokers, dealers, and the investing public in the Arvida common stock to the extent of at least $500,000, which was directly attributable to the publicity activities of defendants.

16. In addition, following the aforementioned publicity activities, Loeb Rhoades received inquiries with respect to participations as underwriters· from 120 securities firms, and as selling group members from 25 securities firms. Loeb Rhoades and Dominick & Dominick also received orders for Arvida common stock and numerous inquiries and expressions of buying interest concerning the stock from members of the investing public.

17. In connection with the foregoing, defendants, directly and indirectly, made use of the mails and means and instruments of transportation and communication in interstate commerce.

18. In connection with the foregoing, defendants were represented by counsel and had no intention of violating the Securities Act.

## Conclusions of Law

1. Section 5(c) of the Securities Act, *inter alia,* makes it " * * * unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, * * * "

2. Section 2(3) of the Securities Act states that as used in the statute the "term 'offer to sell' * * * shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value."

3. Section 2(10) of the Securities Act, in pertinent part, defines a prospectus as "any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale. * * * "

4. Under the circumstances of this case, the furnishing to the press by representatives of the issuer and the underwriters of written and oral communications concerning the forthcoming public offering of the issuer's securities, thereby causing the public distribution of such information through news media, constituted an "offer to sell" such securities within the meaning of Section 2(3) of the Securities Act, and the use of a "prospectus", as that term is defined by Section 2(10) of the Securities Act.

5. Defendants have offered to sell the common stock of Arvida by means of a prospectus and otherwise at a time when no registration statement with respect to such securities had been filed and no exemption was available.

6. Although it appears that defendants acted in good faith and had no intention of violating the Securities Act, and although defendants continue to deny that their above-described actions were in violation of Section 5(c) of said Act, nevertheless, upon the basis of the foregoing, the Court finds that defendants violated Section 5(c) of the Securities Act.

7. A final judgment shall issue permanently enjoining defendants, and each of them, from directly or indirectly making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell shares of common stock of Arvida Corporation or any other security of Arvida Corporation through the use or medium of any prospectus or otherwise, unless a registration statement is filed with the Securities and Exchange Commission as to such securities, and such registration statement is not the subject of a refusal order or stop order or (prior to the effective date of such registration statement) any public proceeding or examination under Section 8 of the Securities Act; providing that the foregoing shall not apply to any security or transaction which is exempt from the provision of Section 5 of the Securities Act of 1933.

An appropriate order will issue.