**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**THOMAS D. KIENLEN CORPORATION (an Oregon corporation) and Thomas D. Kienlen, Defendants.**

**Civil No. 90–6390–JO.**

United States District Court, D. Oregon.

Jan. 16, 1991.

Charles H. Turner, U.S. Atty., James L. Sutherland, Asst. U.S. Atty., Eugene, Or., Jack H. Bookey, Nobuo Kawasaki, Lawrence L. Kiser, and George N. Prince, S.E.C., Seattle, Wash., for plaintiff.

Lois O. Rosenbaum, Stoel Rives Boley Jones & Grey, Portland, Or., for defendants.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

The Securities and Exchange Commission (SEC) moves for partial summary judgment against defendants, Thomas D. Kienlen Corporation (TDK) and Thomas D. Kienlen (Kienlen), on the grounds that defendants violated sections 5(b)(1)[1] and 5(c)[2] of the Securities Act of 1933, 15 U.S.C. §§ 77e(b)(1) and (c), the first and second causes of action in the SEC's complaint.

*Facts*

Since TDK was formed in 1980, TDK through Kienlen has offered a mutual fund timing service to its clients. Kienlen's investment strategy involves TDK's clients authorizing TDK to switch the clients' money between equity funds, common stock, and money market funds. Kienlen invests TDK's clients' money in stock when Kienlen believes the stock market is trending upward and invests TDK's clients' money in money market mutual funds when Kienlen believes the stock market is trending downward.

At a meeting of TDK clients in Eugene, Oregon on January 26, 1988 Kienlen announced plans to form a new mutual fund, to be managed by himself, using the investment strategy of TDK's timing service.

The January meeting was preceded by a notice mailed to TDK clients on December 24, 1987. The notice stated that the meeting's agenda would include a special topic, "The Christos Growth Fund (a new mutual fund managed by TDK Corp.)," offering "(1) Greater safety and improved performance" and "(2) Lower costs (no more quarterly fees)."

At the January meeting, Kienlen passed out a brochure and made an oral presentation including statements that he would use market timing to enable Christos to outperform other mutual funds, that Kienlen had run a hypothetical portfolio between December 7, 1987 and January 15, 1988 which outperformed the Dow Jones Industrial Average by sixty-two percent during the period, that Kienlen would assure that safety of the Christos Fund by covering each securities position with a stop loss order, and that the investors in the fund would not pay the quarterly fees which the investors paid as TDK advisory clients.

---

**1.** "It shall be unlawful for any person … to make use of … the mails to carry or transmit any prospectus relating to any security with respect to which a registration statement has been filed … unless such prospectus meets the requirements of section 77j [section 10]…." 15 U.S.C. § 77e(b)(1).

**2.** "It shall be unlawful for any person … to make use of … the mails to offer to sell … through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security…." 15 U.S.C. § 77e(c).

On March 23, 1988, TDK and Kienlen filed with the SEC a Form N–1A registration statement on behalf of the Christos Trust (Christos) to register Christos as an investment company under the Investment Company Act of 1940, 15 U.S.C. § 80a–8, and to register an indefinite number of shares of Christos common stock under the Securities Act, 15 U.S.C. § 77f.

On March 31, 1988, Kienlen formed Christos as an Oregon business trust, naming himself as president and a trustee of Christos.

On May 24, 1988, TDK mailed to clients a letter which advised clients that the new Christos Fund was expected to be in operation within the next thirty days. The letter claimed that the hypothetical portfolio outperformed the stock market by double and promised "the safest equity fund in the country."

While the Christos registration statement was pending, Christos completed its organization and entered into an investment advisory agreement with TDK. On July 20, 1988, the Christos registration statement went into effect.

On July 21, 1988, TDK mailed to clients a postcard that introduced the Christos Fund and solicited clients to call for information, an appointment, and enrollment forms.

On August 26, 1988, TDK mailed to TDK clients a letter informing the clients of a "window of opportunity" to invest in the Christos Fund without paying a front-end sales load until September 18, 1988 and mailed a four-page brochure entitled "Questions and Answers About the Christos Fund." The brochure touted investment in the Christos Fund, promised a safe and secure investment, promised a reduction in management fees, and claimed that a hypothetical portfolio performed better than the Standard & Poor 500–Stock Index.

*First Cause of Action*

■ From December 24, 1987 to March 23, 1988, defendants offered to sell to members of the public securities in the form of shares of common stock of Christos. No registration statement was filed or in effect with the SEC. Defendants violated 15 U.S.C. § 77e(c), Section 5(c) of the Securities Act of 1933.

Specifically, defendants violated section 5(c) in the December 24, 1987 notice of the January meeting in which defendants discussed the new mutual fund, offered greater safety, improved performance and lower costs before a registration statement was filed.

Defendants also violated section 5(c) at the January 26, 1988 meeting when Kienlen distributed a brochure about the new mutual fund and its benefits before defendants filed a registration statement.

*Second Cause of Action*

From March 23, 1988 to August 31, 1988, defendants mailed prospectuses relating to common stock of Christos. A registration statement was filed on March 23, 1988. The prospectuses did not meet the requirement of section 10 of the Securities Act of 1933, 15 U.S.C. § 77j. Defendants violated 15 U.S.C. § 77e(b)(1), Section 5(b)(1) of the Securities Act of 1933.

Section 5(b)(1) is violated if a prospectus is mailed after a registration statement has been filed, but before the registration statement is effective, and the prospectus is not a statutory prospectus. Section 5(b)(1) is also violated if a prospectus is mailed after the registration statement is effective, but the prospectus is not a statutory prospectus and is not accompanied or preceded by a statutory prospectus.

■ Specifically, the letter mailed by defendants to TDK investors on May 24, 1988 advising that the new fund was expected to be in operation within thirty days and claiming the hypothetical portfolio outperformed the stock market constituted a prospectus. The use of this prospectus during the waiting period, after the registration statement was filed, but before the statement was effective, violated section 5(b)(1) because the prospectus failed to conform to section 10 requirements.

Defendants violated section 5(b)(1) on July 21, 1988 when defendants mailed a postcard, a prospectus, to TDK clients soliciting business and renewing defendants' claims about greater safety, high returns,

and lower costs because the prospectus, which was mailed after the effective date of the registration statement, was not sent to TDK clients prior to or at the same time as a section 10 prospectus.

On August 26, 1988 defendants violated section 5(b)(1) when defendants mailed a letter with a brochure which promised various benefits of the new fund. The SEC withdraws this issue as a basis for summary judgment.[3]

*Summary Judgment*

The SEC submits that

[p]laintiff here seeks to narrow the issues for trial by obtaining partial summary judgment, on the basis that there are no genuine issues of material facts concerning the violations of registration provisions of the Securities Act alleged in the complaint and that as a matter of law defendants have violated such provisions. Plaintiff does not at this time seek permanent injunctive relief based on these violations.

■ The parties agree that in order to prove a violation of sections 5(b)(1) and 5(c) of the Securities Act, the SEC must show: 1) defendants made a communication which used the mail or other means of interstate communication; 2) the communication constituted an "offer to sell" securities; and 3) the offer was made in a manner prohibited by section 5.

The parties disagree whether scienter is a necessary element. After parsing 15 U.S.C. §§ 77e(b)(1) and (c), the court is not persuaded by defendants' argument that a distinction ought to be made depending upon whether securities were actually sold. The plain language of the statute makes no such distinction. Defendants have offered no authority for such a distinction.

"[S]cienter is not required by the plain language of the statute [section 5 of the Securities Act of 1933, 15 U.S.C. § 77e], and the case law confirms this conclusion." *SEC v. National Executive Planners, Ltd.,* 503 F.Supp. 1066, 1072 (M.D.N.C.

1980) (citations omitted); *see also SEC v. Arvida Corp.,* 169 F.Supp. 211, 215 (S.D.N.Y.1958) ("Although it appears that defendants acted in good faith and had no intention of violating the Securities Act ... the Court finds that defendants violated Section 5(c) of the Securities Act."). The SEC is not required to prove scienter because scienter is not an element of violations based upon 15 U.S.C. §§ 77e(b)(1) and (c).

*Mail or Interstate Communication*

Defendants do not dispute that defendants used the mail to communicate to TDK clients defendants' intent to establish the Christos Fund.

*Violation of Section 5*

The SEC correctly submits that

[t]he third element, that the offer was made in a manner prohibited by Section 5, is established if (a) the offer was made without a registration statement having been filed as to the security [in violation of Securities Act § 5(c) ]; or (b) the offer was made by means of a prospectus relating to the security with respect to which a registration statement had been filed, but which prospectus did not meet the requirements of Section 10 of the Act [in violation of Securities Act § 5(b)(1) ].

The disposition of this motion, therefore, turns upon whether defendants' conduct constituted an "offer to sell."

*Offer to Sell*

Section 2(3) of the Securities Act, 15 U.S.C. § 77b(3), defines "offer," "offer for sale" or "offer to sell" as "every attempt or offer to dispose of, or solicitation of an offer to buy, a security ... for value."

*1. December 24, 1987 Notice and January 26, 1988 Brochure—Prior to Filing the Registration Statement*

The SEC states that "[e]ach communication was on its face calculated to interest investors and precondition their opinions about the value, safety and projected performance of the Christos Fund, and thus each communication constituted an 'offer to sell.'" According to the SEC,

TDK clients received the definitive prospectus, the section 10 prospectus, before the clients received the "questions and answers" brochure.

---

**3.** The SEC concedes, in light of defendants' opposition to the SEC's motion for summary judgment, that an issue of fact remains whether

[t]he effectiveness of the registration provisions of the Securities Act, and their stress on the investor having access to all material facts regarding his investment before making his investment decision, would be seriously undermined by a construction of the Act which did not take account of the constant tendency of promoters to condition the market for the securities that they are trying to sell.

Defendants contend that the SEC's definition of "offer to sell" is overly broad. Defendants distinguish the cases cited by the SEC on the grounds that the cited cases involve more flagrant conduct than was engaged in by defendants and that the cited cases dealt with the marketing of common stock.

Defendants submit that the "formation of an early opinion of the monetary value of a mutual fund is irrelevant," unlike when dealing with common stock. "The performance of a mutual fund is based on how well it invests money, not on how many people wish to buy shares." This distinction between shares of common stock and a mutual fund, for purposes of determining whether defendants' conduct constituted an "offer to sell" within the definition of 15 U.S.C. § 77b(3), is not dispositive because the statute makes no such distinction.

Even if the court accepts the SEC's definition of "offer to sell," defendants submit that the SEC's motion ought to be denied because the defendants did not transmit the type of information discouraged by the rules. "[T]he Commission [does not] allege that the performance of the model portfolio was reported inaccurately."

In addition, consistent with the securities laws' goal to ensure full and fair disclosure of all securities information by slowing down the distribution process, defendants submit that the claimed violations in December of 1987 and January of 1988 occurred six months prior to the securities' availability date of July 1988.

■ "[T]he term 'offer' has a different and far broader meaning in securities law than in contract law. *See, e.g., Diskin v. Lomasney & Co.,* 452 F.2d 871, 875 (2nd Cir.1971) ... *SEC v. Commercial Inv. & Dev. Corp. of Florida,* 373 F.Supp. 1153, 1164 (S.D.Fla.1974) (finding a newsletter stressing the importance of shareholders' soliciting others was 'offer to sell')." *Hocking v. Dubois,* 885 F.2d 1449, 1458–59 (9th Cir.1989).

Impossibility of performance is not dispositive to the court's determination of whether defendants' conduct constituted an "offer to sell." What is dispositive to the court's determination is whether defendants' conduct conditioned the public mind.

In *Chris–Craft Indus., Inc. v. Bangor Punta Corp.,* 426 F.2d 569 (2nd Cir.1970), the court held that defendants violated section 5(c), 15 U.S.C. 77e(c), when defendants issued a press release before filing a registration statement. The court based its ruling upon the press release's inclusion of the value per share.

[I]t is reasonable to conclude that the assigning of a value to offered shares constitutes an offer to sell. One of the evils of a premature offer is its tendency to encourage the formation by the offeree of an opinion of the value of the securities before a registration statement and prospectus are filed.

*Id.* at 574.

In *SEC v. Arvida Corp.,* 169 F.Supp. 211 (S.D.N.Y.1958), defendant conducted a press conference where a spokesperson answered reporters' questions, including questions regarding the proposed offering price per share. The court found "the furnishing to the press by representatives of the issuer and the underwriters of written and oral communications concerning the forthcoming public offering of the issuer's securities, thereby causing the public distribution of such information through news media, constituted an 'offer to sell.'" *Id.* at 215.

In *SEC v. Commercial Inv. & Dev. Corp. of Florida, supra,* the court held that a letter soliciting participation from current investors and encouraging current investors to give "names, addresses and telephone numbers of those friends you [the investors] would like to see as part-

ners," *Id.* at 1158, to constitute an "offer to sell." *Id.* at 1164.

"When it is announced that securities will be sold at some date in the future and, in addition, an attractive description of these securities and of the issuer is furnished, it seems clear that such an announcement provides much the same kind of information as that contained in a prospectus." *Chris–Craft, supra,* at 574. The court went on, however, to note that "[d]oubtless the line drawn between an announcement containing sufficient information to constitute an offer and one which does not must be to some extent arbitrary." *Id.*

▪ The court finds that as a matter of law [4] that the December 24, 1987 notice and the brochure handed out at the January 26, 1988 meeting constituted "offers to sell." When defendants touted the "[g]reater safety," "improved performance," and "[l]ower costs," defendants were offering to sell shares of the Christos Fund. The brochure distributed at the January 26, 1988 meeting, which provided an "attractive description" of the Christos Fund, was an "attempt or offer to dispose of, solicitation of an offer to buy, a security ... for value." 15 U.S.C. § 77b(3).

Defendants' arguments that the policy considerations behind the Section 5 requirements do not mandate the finding of violations lack merit. The requirements of 15 U.S.C. §§ 77e(b)(1) and (c) are strict. The statute does not provide for exceptions based upon mental state or lack of harm. The test is a simple one. If defendants failed to conform their conduct to the rules, then defendants violated the law.

Defendants violated 15 U.S.C. § 77e(c) because defendants offered to sell securities before defendants filed a registration statement.

*2. May 24, 1988 Letter—After Filing the Registration Statement, but Before the Effective Date of the Statement*

"Defendants do not dispute that if the Court decides that the May 24, 1988 letter

was an offer to sell securities, the letter may be interpreted as a 'prospectus' within the meaning of ... [15 U.S.C. § 77b(10) ]." Title 15 U.S.C. § 77b(10), section 2(10) of the Securities Act defines "prospectus" as

any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security; except that (a) a communication sent or given after the effective date of the registration statement ... shall not be deemed a prospectus if it is proved that prior to or at the same time with such communication a written prospectus meeting the requirements of ... [section 10] was sent or given to the person to whom the communication was made, and (b) a notice, circular, advertisement, letter, or communication in respect of a security shall not be deemed to be a prospectus if it states from whom a written prospectus meeting the requirement of section ... [10] may be obtained and, in addition, does no more than identify the security, state the price thereof, state by whom orders will be executed, and contain such other information as the Commission ... may permit.

In *Diskin v. Lomasney & Co., supra,* after a registration statement was filed, but before the statement was effective, a letter was sent which stated that "[t]his letter will ... assure you that if you take 1,000 shares of Ski Park City West at the issue price, we will commit to you the sale at the public offering price when, as and if issued, 5,000 shares of Continental Travel, Ltd." *Id.* at 873. Defendants argued that the letter was a "mere expression of willingness to sell." *Id.* at 875. The court disagreed and stated that "[t]he statutory language defining 'offer' in 2(3) [15 U.S.C. § 77b(3) ] goes well beyond the common law concept of an offer.... Consequently, we entertain no doubt that the portion of the letter of September 17 dealing with the

---

**4.** Defendants argue that genuine issues of material fact are disputed. The determination of whether defendants' conduct, as evidenced by the content of the communications delivered by defendants to TDK clients, constituted "offers to sell," within the meaning of 15 U.S.C. § 77b(3), is a legal determination, not a factual determination.

Continental Travel shares constituted an 'offer' within 2(3)." *Id.* (footnote omitted).

Defendants claim their conduct did not constitute an "offer to sell."

No court, to Defendants' knowledge, has gone so far as to find a violation of Section 5(b)(1) based on a one-page letter stating the actual performance of a model portfolio and the author's belief regarding the reasons for the model portfolio's performance. No shares were sold, no offers or payments were received, and no gimmick was used to coerce an unsuspecting public to invest in Christos.

The court, however, disagrees and finds as matter of law that defendants' letter of May 24, 1988 constituted an "offer to sell" within the meaning of 15 U.S.C. § 77b(3). By stating that "I honestly believe the Christos Fund will be the safest equity fund in the country and may also be the best in performance," defendants were offering to sell securities.

Defendants violated 15 U.S.C. § 77e(b)(1) because defendants offered to sell securities, after a registration statement was filed, but before the statement was effective, in a prospectus which failed to conform to section 10, 15 U.S.C. § 77j.

*3. July 21, 1988 Postcard—After the Effective Date of the Registration Statement*

The SEC admits that only one case was found that determined that a post-effective communication constituted a prospectus in violation of section 5. *Bankers Securities Company Inc.*, 6 S.E.C. 631 (1940).

*Bankers Securities* involved "whether the registration of Bankers Securities ... as a dealer should be revoked or suspended." *Id.* Although the communications sent by Bankers Securities stated that "the advertising was not to be construed as an offer to sell the securities," *Id.*, the SEC found

that the brochures, folders, and cards distributed by ... [Bankers Securities] were prospectuses within the meaning of Section 2(10) of the Securities Act of 1933. Those prospectuses did not meet the requirements of Section 10 of the Act. Accordingly, their distribution by

... [Bankers Securities] constituted a violation of Section 5(b)(1) of the Act.

*Id.* The advertising stated that "[s]ecurities of finance companies assure safety of principal, and a steady income," and that "[i]ndustrial banking offers one of the soundest investments in the financial field."

▮ Unlike in *Bankers Securities*, argues defendants, the July 21, 1988 postcard did not make "assurances, promises or guarantees." "By coupling its own interpretation of statutory definitions with exaggerated readings of the subject documents, the Commission has attempted to draw Defendants' innocuous statements into the 'offer to sell' web of the Securities Act."

The court disagrees. The July 21 postcard represented greater safety, high returns, and lower cost. The postcard boldly proclaimed that the "[h]ypothetical portfolio approximately 40% better than DOW JONES during last 7 months." The postcard constituted an "offer to sell." Defendants violated 15 U.S.C. § 77e(b)(1) because the offer to sell was not preceded by or accompanied with the definitive prospectus.

*Conclusion*

The SEC's motion for partial summary judgment (# 11) is GRANTED.