Filed 5/14/02 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2002 ND 80

Terry A. Luallin; Meryl D. Luallin;

Robert Bedrossian; Wayne Baumgardner;

Stephen Nelson; Steven Franks, as 

trustee of the Marie Anne Franks Trust;

and Mortimer J. Matthews, as trustee of

the Matthews Trust, Plaintiffs and Appellants

v.

Ronald C. Koehler and Condor Petroleum 

Inc., Defendants and Appellees

North Tioga #1, a partnership; Tioga 2-A, a 

partnership; North Tioga #3, a partnership;

North Tioga #4, a partnership; Madison

Investors Basin Development, a partnership;

Erickson 3-2 Partners, a partnership;

Investors Production Acquisition #1, a

partnership; Madison Investors Development

#1, a partnership; Madison Investors

Development #1 Water Disposal, a

partnership; Madison Investors Development

#2, a partnership; Madison Investors

Development #3, a partnership; Madison

Investors Development #4, a partnership;

Production Buyers Acquisition #1, a

partnership; Production Buyers Association

#2, a partnership; Production Buyers

Acquisition #3, a partnership; Lodgepole

Re-Entry #1, a partnership; Lodgepole

Re-Entry #2, a partnership; Williston Basin

Preferred Partners #1, a partnership; Capa

Development #1, a partnership; Capa

Development #2, a partnership; Capa

Development #3, a partnership; Capa Water

Transportation System, a partnership, Defendants

No. 20010301

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable David W. Nelson, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

Shane D. Peterson (argued) and Ken G. Hedge (appeared), Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P., P.O. Box 1206, Williston, N.D. 58802-1206, for plaintiffs and appellants.

Lawrence Bender (appeared), Pearce & Durick, P.O. Box 400, Bismarck, N.D. 58502-0400, and Thomas J. Kimmell (argued), Zarlengo & Kimmell, 1775 Sherman Street, Suite 1375, Denver, CO 80203-4316, for defendants and appellees.

Luallin v. Koehler

No. 20010301

Maring, Justice.

[¶1] 
The plaintiff investors, five individuals and two trusts, appealed from a summary judgment dismissing their action for damages against Condor Petroleum, Inc., and its president, Ronald Koehler (collectively referred to as “Condor”), alleging violations of the North Dakota Securities Act of 1951 (“Act”), under N.D.C.C. ch. 10-

04.  We hold the requirements for registration of securities and dealers under the Act do not apply because there was no sale or offer to sell securities from or within North Dakota by the defendants to these plaintiffs; the plaintiffs failed to raise a genuine issue of material fact to support their allegations the defendants committed fraudulent practices in violation of the Act; and the trial court did not abuse its discretion in denying the plaintiffs’ request for further discovery.  We therefore affirm the summary judgment dismissing the action.

I

[¶2] Commencing in 1988, Jerry Anderson, a resident of California, and Peter Sacker, a resident of Michigan, formed two corporations to act as general partners for limited partnerships established to invest in oil and gas operations in North Dakota and other states.  They formed Whitworth Energy Resources, Ltd. (“Whitworth”), a Nevada corporation, with its principal place of business in California, and Williston Basin Holding Corporation (“Williston”), a California corporation operating primarily in California.  Anderson, together with Robert Kerns, established Amerivest Financial Group, Inc., a California corporation, which acted as a selling agent for the Whitworth and Williston oil and gas partnerships.  Over a course of years these entities received $22,000,000 in funds from over 500 persons who invested in 22 oil and gas partnerships.

[¶3] The plaintiffs are residents of California and Washington who invested in these oil and gas partnerships.  The solicitation of these investors and their purchases of the Williston and Whitworth oil and gas limited partnership interests all occurred in the states of California and Washington.

[¶4] Condor is incorporated in Colorado and operates oil and gas wells in North Dakota and other states.  Condor provided geological and engineering information to Whitworth and Williston to enable them to decide whether to purchase interests in various oil and gas drilling ventures in North Dakota.  In return for payments made by Whitworth and Williston, Condor assigned undivided working interests in oil and gas wells to them.  Condor operated the wells and provided drilling and completion reports to the investing partnerships.

[¶5] In 1997, the United States Securities and Exchange Commission filed an action in federal court against Whitworth, Williston, and Amerivest and their principles, alleging fraudulent investment activity and seeking to shut down their operations.  The federal court found that Whitworth and Williston  had defrauded investors in several ways: (1) by falsely representing to investors that distributions were from oil and gas revenues when they were actually made from funds received from other investors; (2) by failing to disclose to investors that Condor claimed a substantial debt for its operating activity; (3) by misrepresenting and overstating ownership interests in wells; and (4) by purporting to assign the same wells to different partnership ventures.  The federal court appointed a receiver to take control of the corporations, to shut down their activities, and to dispose of the assets.  In carrying out these responsibilities, the receiver conducted an audit of Condor’s activities, reached a settlement of the debt owed by Whitworth and Williston to Condor, and transferred title of some of the oil well operations, after auction, to Condor.

[¶6] In April 2001, the plaintiff investors brought this action against Condor, asserting Condor participated in the fraudulent sale of the Whitworth and Williston partnerships and failed to register those securities or its dealers in North Dakota.  Condor moved for a summary judgment dismissing the action.  After a hearing, the trial court concluded none of the Whitworth or Williston partnership securities were sold from or within North Dakota and, consequently, the North Dakota registration provisions did not apply to the sale of those securities.  The court also determined the plaintiffs provided no factual basis for the alleged acts of fraud by Condor and, consequently, there was no genuine issue of material fact requiring a trial on the fraud claims.  The court, without granting the plaintiffs’ request for additional time for discovery, granted Condor’s motion for summary dismissal of the case.

II

[¶7] Summary judgment is a procedure for the prompt and expeditious disposition of a controversy without trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes would not alter the result.  
Steiner v. Ford Motor Co.
, 2000 ND 31, ¶ 6, 606 N.W.2d 881.  Factual issues become appropriate for summary judgment when reasonable minds can draw but one conclusion from the evidence.  
Jones v. Barnett
, 2000 ND 207, ¶ 4, 619 N.W.2d 490.  On appeal, we determine whether a genuine issue of fact exists and whether the law was applied correctly.  
Steiner
, 2000 ND 31, ¶ 6, 606 N.W.2d 881.  Questions of law are fully reviewable on appeal.  
Id.

[¶8] The purpose of the North Dakota Securities Act is to protect the investing public from fraud, deception, and the disposal of securities where the proposed plan of business appears to be unfair, unjust, or inequitable.  N.D.C.C. § 10-04-08.1; 
Meadow Fresh Farms, Inc. v. Sandstrom
, 333 N.W.2d 780, 783 (N.D. 1983).  Within the Act is a three-part framework for protecting investors and the public:

(1) the first part regulates securities;

(2) the second part regulates the people who offer, sell, or provide security investment advice; and 

(3) the third part prohibits fraud when securities are offered for sale, are sold, or are purchased, or when security advice is given.

State v. Goetz
, 312 N.W.2d 1, 5 (N.D. 1981).

[¶9] The requirement for registering securities is found under N.D.C.C. § 10-04-04:

It is unlawful for any person to sell, or offer for sale, any security in this state unless it is registered under this chapter or the security or transaction is exempt under section 10-04-05 or 10-04-06 or it is a federal covered security.

[¶10] The requirement for registering persons dealing in securities is found under N.D.C.C. § 10-04-10, which provides in relevant part:

A dealer or agent may not offer for sale or sell any securities within or from this state, except in transactions exempt under section 10-04-06, unless registered as a dealer or agent pursuant to the provisions of this section.

[¶11] The primary objective of statutory construction is to ascertain the intent of the Legislature.  
Narum v. Faxx Foods, Inc.
, 1999 ND 45, ¶ 18, 590 N.W.2d 454.  In ascertaining legislative intent we look first at the words used in the statute, giving them their ordinary plain language meaning.  
Id.
  If the statute is unambiguous we apply the plain language.  
State v. Hafner
, 1998 ND 220, ¶ 10, 587 N.W.2d 177.  Interpretation of a statute is a question of law, fully reviewable on appeal.  
Berg v. Berg
, 2000 ND 36, ¶ 24, 606 N.W.2d 895.

[¶12] The requirement for registration of securities under the Act unambiguously applies only to securities which are sold or offered for sale “in this state.”  Likewise, the requirement for registering persons dealing in securities under the Act  unambiguously applies only to dealers or agents who “offer for sale or sell any securities within or from this state.”  The trial court found that these registration requirements did not apply to this case, because the limited partnership interests purchased by the plaintiffs were neither sold nor offered for sale within or from North Dakota.

[¶13] Relevant to this case, the only securities purchased by the plaintiffs were interests in oil and gas limited partnerships established by and sold through Whitworth, Williston, and Amerivest.  The offers for sale and the purchases all occurred outside the state of North Dakota.  Although some of the limited partnerships, in which the plaintiffs invested their monies, subsequently purchased working interests in North Dakota oil and gas wells operated by Condor, those transactions are not the subject of this lawsuit.  Those were separate transactions between the partnerships and Condor and did not involve the sale of securities to the plaintiffs who filed this action.

[¶14] There is no allegation or evidence that any of these plaintiffs purchased partnership interests or other securities in North Dakota or that any solicitation of purchases by these plaintiffs were made in or from North Dakota.  For a state’s securities law to apply, there generally must be some physical nexus between the sale or offer to sell the securities and the state.  
Ah Moo v. A.G. Becker Paribas, Inc.
, 857 F.2d 615, 620 (9th Cir. 1988) (sale of stock by telephone from California to buyer in Hawaii where salesman traveled to Hawaii and made other communications in Hawaii offering to sell the stock to buyer created sufficient nexus for application of Hawaii’s blue sky laws); 
Rosenthal v. Dean Witter Reynolds, Inc.
, 908 P.2d 1095, 1105 (Colo. 1995) (there was sufficient “transactional nexus” to apply Colorado law for bonds purchased in Pennsylvania where the bonds were issued by and the official statement was prepared by an entity located in Colorado with whom the defendants participated in the distribution of the offering materials in Colorado).  No such nexus with North Dakota exists in this case. There is no evidence any of these plaintiffs ever communicated with Condor either in North Dakota or elsewhere about investing in the Whitworth or Williston partnerships.

[¶15] Under N.D.C.C. § 10-04-02(9) the phrases “offer for sale” and “offer to sell” are defined to mean “every attempt or offer to dispose of, or solicitation of an order or offer to buy, a security or interest in a security for value.”  There is no showing the defendants made any attempt or offer in North Dakota to dispose of or solicit an order or offer to buy any of the Whitworth or Williston limited partnership interests.

[¶16] The plaintiffs argue the language in N.D.C.C. § 10-04-04 referring to “security in this state” could be construed as merely requiring the assets underlying the sale of a security to be located in North Dakota and there need not be an offer or sale of the security in North Dakota for the Act to apply.  The plaintiffs claim that under this interpretation the Act would apply, because the oil and gas wells are located in North Dakota.  The plaintiffs’ argument is misplaced.

[¶17] There was no sale of any interest in North Dakota oil and gas wells to these plaintiffs by the defendants.  The assignments of the North Dakota oil and gas interests were made between Condor and the Whitworth and Williston limited partnerships. Even if N.D.C.C. § 10-04-04 could be construed as urged by the plaintiffs, the Act would not apply to this case, because the plaintiffs were not parties to the transactions involving assignment of the oil and gas interests in North Dakota.  We therefore conclude that, as a matter of law, under these circumstances, the North Dakota provisions for registering securities and dealers under N.D.C.C. §§ 10-04-04 and 10-04-10 do not apply.

III

[¶18] The plaintiffs assert Condor should be held liable to them for damages under N.D.C.C. § 10-04-17 for participating or aiding in the sale of the limited partnership interests purchased by the plaintiffs.  That statute provides, in relevant part:

Every sale or contract for sale made in violation of any of the provisions of this chapter, or of any rule or order issued by the commissioner under any provisions of this chapter, shall be voidable at the election of the purchaser.  The person making such sale or contract for sale, and every director, officer, or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser.

[¶19] Any sale or contract made in violation of the Act subjects the person making that sale to liability.  The law also makes any “agent” of the seller liable if the agent has “participated or aided in any way in making such sale.”  What constitutes participation or aid in any way in making a sale of securities is determined upon the facts of each case and not by a fixed rule of law.  
Schollmeyer v. Saxowsky
, 211 N.W.2d 377, 381 (N.D. 1973).  Although it is undisputed that Condor provided geological, engineering, and other general information to Whitworth and Williston, we cannot agree with the plaintiffs that Condor’s activities made Condor an agent of Whitworth or Williston or constituted assistance in selling the limited partnership interests for purposes of applying N.D.C.C. § 10-04-17 to Condor.

[¶20] Condor does not dispute that it provided geological and engineering information to assist the Whitworth and Williston partnerships in deciding in which oil and gas drilling ventures they would invest.  When the partnerships decided to invest in an oil and gas venture operated by Condor, they would send funds to Condor which Condor used to purchase the oil and gas interests.  Condor would then assign an undivided working interest to the partnerships, and Condor would operate the wells. When the wells generated revenues, Condor sent revenue payments to Whitworth and Williston in accordance with the terms of the assignment agreements.  The plaintiffs assert that Condor’s submission of geological, engineering and other informational materials to the partnerships constituted participation or assistance by Condor in the sale of the limited partnership interests, thereby subjecting Condor to liability under N.D.C.C. § 10-04-17.

[¶21] Section 10-04-02(1), N.D.C.C., defines agent as “any individual, other than a dealer, who represents a dealer or an issuer or is self-employed in effecting or attempting to effect purchases or sales of securities.”  While Condor may have provided information to the limited partnerships to inform them about purchasing interests in various oil and gas well operations, Condor did not involve itself in the activities of selling the Whitworth or Williston limited partnerships.  This case is clearly distinguishable from authorities cited by the plaintiffs in support of their position.

[¶22] For example, the plaintiffs cite 
Rio Grande Oil Co. v. State
, 539 S.W.2d 917 (Tex. Civ. App. 1976), for the proposition that someone providing reports on the geology of oil and gas fields should be held liable for the selling of unregistered oil and gas lease securities involving those fields.  The Texas Court of Civil Appeals in 
Rio Grande
, 539 S.W.2d at 921-22, explained its conclusion that the Rio Grande Oil Company and its agents were guilty of selling unregistered oil and gas lease securities:

Rio Grande Oil is a Texas corporation, located in Houston, engaged in the selling of fractional interests in oil and gas leases located in Texas.  Telephone calls by Rio Grande Oil sales personnel located in Houston were made to other states soliciting offers to buy such interests, and information provided by Rio Grande Oil was mailed from Texas to prospective out-of-state investors.  Rio Grande Oil maintains its bank accounts in Houston and conducts portions of its business through them.  On one occasion an investor and his wife came to Texas and visited the Rio Grande office.  They were not offered any interests and their check was not solicited, but they were given glowing reports on the geology of some of the fields being developed and were told they should get in on them if possible.

. . . .

[W]e think it clear that the Texas Securities Act applies if any act in the selling process of securities covered by the Act occurs in Texas.

. . . .

In our case the defendants told their prospective purchasers to mail in their checks for the fractional interests.  The “subscription of lease interest” form contained this provision: “It is understood that the sale to me (us) of the above interest(s) is subject to prior sale.”  The defendants were making solicitations of sales or attempts to sell; the acceptances were intended to be made and were made in Texas, so the sales were Texas ones.

The case is clearly distinguishable from the factual circumstances here and is not persuasive authority for the position advanced by the plaintiffs.  The Rio Grande Oil Corporation’s agents were clearly soliciting persons to purchase oil and gas leases from them.  Their activities were directly related to the solicitation of investors and to the sale of the securities.  In contrast, Condor never had any communication or contact with any of the plaintiff investors prior to their investing in the Whitworth and Williston partnerships.  By merely providing information to Whitworth and Williston, Condor did not participate in soliciting investors or aid in making sales of the limited partnership interests.

[¶23] The plaintiffs also cite 
S.E.C. v. Thomas D. Kienlen Corp.
, 755 F.Supp. 936

(D. Or. 1991), in support of their argument that Condor should be held liable for assisting in the sale of the Whitworth and Williston securities.  In 
Kienlen
, 755 F.Supp at 941, the federal district court concluded that defendants Thomas D. Kienlen Corporation (TDK), and its chief executive, Thomas Kienlen, were guilty of offering to sell securities without filing a registration statement.  The court described the activity of the defendants:

Since TDK was formed in 1980, TDK through Kienlen has offered a mutual fund timing service to its clients. . . .  Kienlen invests TDK’s clients’ money in stock when Kienlen believes the stock market is trending upward and invests TDK’s clients’ money in money market mutual funds when Kienlen believes the stock market is trending downward.

At a meeting of TDK clients in Eugene, Oregon on January 26, 1988 Kienlen announced plans to form a new mutual fund, to be managed by himself, using the investment strategy of TDK’s timing service.

The January meeting was preceded by a notice mailed to TDK clients on December 24, 1987.  The notice stated that the meeting’s agenda would include a special topic, “The Christos Growth Fund (a new mutual fund managed by TDK Corp.),” offering “(1) Greater safety and improved performance” and “(2) Lower costs (no more quarterly fees).”

At the January meeting, Kienlen passed out a brochure and made an oral presentation including statements that he would use market timing to enable Christos to outperform other mutual funds.

. . . .

The court finds that as a matter of law that the December 24, 1987 notice and the brochure handed out at the January 26, 1988 meeting constituted “offers to sell.”  When defendants touted the “[g]reater safety,” “improved performance,” and “[l]ower costs,” defendants were offering to sell shares of the Christos Fund.

Kienlen
, 755 F.Supp. at 937, 941 (footnote omitted).  The activity of the defendants in 
Kienlen
 is clearly distinguishable from the activity of Condor in this case.  The defendants in 
Kienlen
 held meetings and provided brochures and other materials to potential investors with the obvious and direct purpose of soliciting them to invest in the defendants’ mutual fund.  Here, Condor has had no communications or meetings with any of the plaintiffs about investing or about anything else.  Unlike the defendants in 
Kienlen
, Condor did not participate or aid in the solicitation or sale of any security to the plaintiffs as potential investors.

[¶24] We find other authorities cited by the plaintiffs no more persuasive on this issue.  We, therefore, agree with the trial court that, as a matter of law, N.D.C.C. § 10-

04-17 is not applicable under the circumstances and Condor is not subject to liability thereunder.

IV

[¶25] The plaintiffs assert Condor committed fraudulent practices in violation of the following specific provisions of N.D.C.C. § 10-04-15:

It shall be a fraudulent practice and it shall be unlawful:

. . . .

2. For any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, to employ any device, scheme, or artifice to defraud.

3. For any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

4. For any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, to engage in any act, practice, or course of business which operates or would operate as a fraud or deception upon purchasers or the public.

The plaintiffs assert that Condor should be held responsible for participating in the defrauding of investors perpetrated by Whitworth, Williston, and Amerivest.  The trial court concluded the plaintiffs failed to provide any factual basis for their alleged claim of fraud against the defendants here.

[¶26] Although the party seeking summary judgment bears the initial burden of showing there are no genuine issues of material fact, the party resisting the motion may not simply rely upon pleadings or upon unsupported, conclusory allegations.  
Smith v. Land O’Lakes, Inc.
, 1998 ND 219, ¶ 10, 587 N.W.2d 173.  The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court’s attention to relevant evidence in the record by setting out the page and line in depositions or other documents containing testimony or evidence raising an issue of material fact.  
Id.
  Furthermore, fraud must be proved by clear and convincing evidence, and that higher burden of proof should have a corresponding effect on the judge when determining if a factual issue as to fraud exists.  
Id.
 at ¶ 12.  If the evidence presented is of insufficient caliber or quantity to allow a rational finder of fact to find fraud by clear and convincing evidence, there is no genuine issue of material fact.  
Id.

[¶27] The federal court found Whitworth, Williston, and Amerivest committed fraud by falsely representing that distributions were from oil and gas revenues rather than from other investor’s contributions, by failing to disclose the debt owed Condor, by misrepresenting and overstating ownership interests in wells, and by assigning the same oil well properties to different partnership ventures.  Counsel for the plaintiffs conceded during oral argument the plaintiffs have no evidence that the defendants in any communication, written or otherwise, provided false or misleading information about potential oil well investment interests.  Furthermore, the federal court’s findings of fraud committed by Whitworth, Williston, and Amerivest do not implicate wrongdoing by Condor.  In fact, the receiver appointed by the federal court conducted an extensive audit of Condor’s activities and concluded Condor was entitled to payment of a considerable sum as a creditor of the partnerships for operating the oil and gas wells.  The receiver reached a settlement agreement to pay the legitimate debts owed to Condor by Whitworth and Williston.  The plaintiffs have failed to present any evidence connecting Condor to the fraudulent conduct of Whitworth, Williston, and Amerivest.

[¶28] We therefore agree with the district court that the plaintiffs have failed to raise a genuine issue of material fact on their claims of fraud against Condor.

V

[¶29] The plaintiffs assert the trial court should have granted them additional time to conduct discovery.  Rule 56 (f), N.D.R.Civ.P., provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party’s opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The purpose of Rule 56(f) is to provide an additional safeguard against the improvident or premature grant of summary judgment, and the rule generally has been applied to achieve that objective.  
Johnson Farms v. McEnroe
, 1997 ND 179, ¶ 27, 568 N.W.2d 920.  However, there are limits regarding when relief under Rule 56(f) should be granted, and this Court will not set aside the trial court’s decision under a Rule 56(f) motion unless the court has abused its discretion.  
See
 
Perry Center, Inc. v. Heitkamp
, 1998 ND 78, ¶¶ 10, 11, 576 N.W.2d 505.

[¶30] The plaintiffs have not persuasively demonstrated why they should have additional time for discovery to seek evidence in support of their claims of wrongdoing by Condor.  The gist of the plaintiffs’ action is that Condor somehow defrauded the plaintiffs into investing in oil and gas limited partnerships.  Facts to support the allegation, if they exist, should be within the knowledge of the plaintiffs.  It is difficult to imagine how giving the plaintiffs additional time would, under these circumstances, result in plaintiffs discovering other relevant evidence to support their claims against Condor.  The plaintiffs allege the defendants have perpetrated a fraud upon them but cannot now explain by what actions Condor wronged them.  The federal action based upon the fraudulent activities of Whitworth and Williston has been ongoing since at least 1997.  The plaintiffs have had considerable time to discover wrongdoing, if any, by Condor.  It is simply not enough to make unsupported, conclusory allegations.  We are not persuaded lack of time for discovery is the problem.  Under these circumstances, we conclude the trial court did not abuse its discretion in refusing to grant the plaintiffs’ request for additional time to conduct discovery.

VI

[¶31] We hold, under the facts presented by the plaintiffs, that N.D.C.C. §§ 10-04-04 and 10-04-10 do not apply because the case does not involve a sale or offer to sell from or within this state.  We hold, as a matter of law, defendants did not participate or aid in the unlawful sale or contract for sale of securities which would subject them to liability under N.D.C.C. § 10-04-17.  We hold the plaintiffs have failed to present a genuine issue of material fact in support of their claims of fraudulent conduct by the defendants under N.D.C.C. § 10-04-15.  We also hold the trial court did not abuse its discretion in refusing to grant the plaintiffs additional time for discovery under N.D.R.Civ.P. 56(f).  We, therefore, affirm the summary judgment dismissing the plaintiffs’ action for damages against Condor and its president Ronald Koehler.

[¶32] Mary Muehlen Maring

William A. Neumann

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.