2008 ND 52

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Pete JACOBSEN, Defendant and Appellant.**

No. 20070105.

Supreme Court of North Dakota.

March 20, 2008.

James Peter Wang, State's Attorney, Minnewauken, N.D., for plaintiff and appellee.

Jessica Johanna Ahrendt, Valley City, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1]   Pete Jacobsen appeals from a district court order revoking his probation and resentencing him on his conviction for issuing checks without sufficient funds or credit.  We affirm, concluding the district court's finding that Jacobsen violated the terms of his probation was not clearly erroneous and that the district court did not abuse its discretion when it revoked Jacobsen's probation and resentenced him.

I

[¶ 2]   In December 2005, Jacobsen issued a check for $37,000 to Warwick Public School without sufficient funds in the account to cover the check.  Jacobsen was charged with issuing a check without sufficient funds or credit under N.D.C.C. § 6–08–16.  Jacobsen and the State reached a plea agreement whereby he agreed to plead guilty and to pay full restitution of the $37,000, and the State agreed to a deferred imposition of sentence for one year, during which time Jacobsen would be on supervised probation.

[¶ 3]   At a June 7, 2006, hearing to accept Jacobsen's guilty plea, the district court questioned Jacobsen at length about his financial ability to make the required restitution payments.  Jacobsen advised the court he and his wife were in the process of selling their house, in which he claimed they had $70,000 to $80,000 in equity.  Jacobsen advised the court of his intention to use the proceeds from the sale of the house to pay off the restitution "as

soon as possible ... in three or four months." The court explained to Jacobsen that he was required to pay at least $3,000 each month commencing August 1, 2006, but "I expect though that if you have the money from the house sale, you will pay it off." Jacobsen responded, "Yes." Jacobsen also indicated his desire to move to Florida with his wife and children to be closer to his extended family and to pursue employment opportunities there. Jacobsen assured the court he could meet his financial obligations, including paying his restitution, working in his family's commercial fishing business and doing carpentry work.

[¶ 4] The court accepted Jacobsen's guilty plea and deferred imposition of sentence for one year. Jacobsen was placed on supervised probation subject to various conditions, including requirements that he maintain suitable employment and pay restitution of $37,000, with required monthly payments of at least $3,000 beginning on August 1, 2006.

[¶ 5] Jacobsen was allowed to move to Florida, where he was supervised by the Florida Department of Corrections. Jacobsen made his monthly $3,000 restitution payments for August and September 2006, but failed to make any payment in October or November. North Dakota probation officials then requested information from Jacobsen's probation officer in Florida. In a response dated November 8, 2006, Florida officials indicated Jacobsen had been unemployed for over two months, his wife and children had moved to Indiana to live with her family, and Jacobsen was homeless and living with his brother in Florida. The State filed a petition for revocation of probation in North Dakota on December 12, 2006. Jacobsen subsequently made a $12,000 restitution payment in December 2006 and paid off the $19,000 balance in January 2007.

[¶ 6] At the April 2007 revocation of probation hearing, the State presented evidence showing Jacobsen and his wife had sold their house in Grand Forks in July 2006 and had received a check for $55,177.71 upon closing. The court also received conflicting evidence on Jacobsen's employment history in Florida. The November 8, 2006, communication from Florida authorities was admitted into evidence, indicating Jacobsen was homeless and had not worked for two months. However, Jacobsen's required written monthly reports to the Florida Department of Corrections were also introduced. In those reports, Jacobsen certified that while in Florida he had earned $3,000 in August, $5,000 in September, $3,000 in October, and $2,000 in November.

[¶ 7] The district court found Jacobsen had violated the terms of his probation by failing to make his monthly restitution payments as ordered by the court, by failing to maintain suitable employment, and by failing to apply the proceeds from the sale of his home to the restitution owed. The court revoked the deferred imposition of sentence and probation and sentenced Jacobsen to serve seven months and eight days with the North Dakota Department of Corrections.

II

[¶ 8] This Court reviews a revocation of probation under a two-step analysis. *State v. Stavig*, 2006 ND 63, ¶ 6, 711 N.W.2d 183; *State v. Nordahl*, 2004 ND 106, ¶ 11, 680 N.W.2d 247; *State v. Causer*, 2004 ND 75, ¶ 30, 678 N.W.2d 552. "First, we review the district court's factual finding of a probation violation under the clearly erroneous standard." *State v. Wardner*, 2006 ND 256, ¶ 19, 725 N.W.2d 215; *Stavig*, at ¶ 6; *Causer*, at ¶ 31. "A finding of fact is clearly erroneous when it is induced by an erroneous view of the law,

when there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, the court is left with a definite and firm conviction that a mistake has been made." *Wardner*, at ¶ 19 (quoting *State v. Oien*, 2006 ND 138, ¶ 11, 717 N.W.2d 593). Second, we determine whether the district court abused its discretion when it decided that revocation of probation was warranted. *Wardner*, at ¶ 26; *Stavig*, at ¶ 6; *Causer*, at ¶ 32. "A district court abuses its discretion when it acts in an arbitrary, unreasonable, unconscionable, or capricious manner, or if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law." *Wardner*, at ¶ 26.

### III

[¶ 9]   Jacobsen contends that "[t]he trial court's finding of fact that Defendant violated probation conditions by willfully failing to pay restitution as ordered by the Court was clearly erroneous." He claims that he was financially unable to make the required monthly payments but that he "put forth a good faith effort to make the restitution payments" and "made bona fide efforts to repay the money."

■   [¶ 10]   The district court's determinations on whether the defendant violated the terms of probation are findings of fact. *See Wardner*, 2006 ND 256, ¶ 19, 725 N.W.2d 215; *Stavig*, 2006 ND 63, ¶ 6, 711 N.W.2d 183; *Causer*, 2004 ND 75, ¶ 31, 678 N.W.2d 552. Probation revocation is not a stage of the criminal proceedings, and the State need only prove a probation violation by a preponderance of the evidence. N.D.R.Crim.P. 32(f)(3)(B); *Wardner*, at ¶ 18. In this context, we have noted that, "[g]iven the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to im-

prisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." *Wardner*, at ¶ 18 (quoting *State v. Olson*, 2003 ND 23, ¶ 14, 656 N.W.2d 650). Although the State generally has the burden of proving the defendant violated the terms of probation, "[t]he defendant has the burden to raise and prove an inability to pay restitution at … revocation proceedings triggered by the defendant's failure to pay ordered restitution." *State v. Tupa*, 2005 ND 25, ¶ 14, 691 N.W.2d 579; *see also State v. Gill*, 2004 ND 137, ¶ 14, 681 N.W.2d 832.

[¶ 11]   Jacobsen does not dispute that he failed to make the required $3,000 monthly payments when due in October and November 2006. The State presented uncontradicted evidence that Jacobsen and his wife received more than $55,000 from the sale of their house in July 2006. Although there is some conflict in the evidence on Jacobsen's earnings in Florida, Jacobsen argues he earned $13,000 between August 1 and November 30.

■   [¶ 12]   In spite of this evidence, Jacobsen contends the State presented "no evidence" that he had willfully failed to pay restitution because "[i]t was not shown that he had frivolously spent his income, that he had purchased large items or expensive gifts, or that he had in any other way squandered his earnings away." Jacobsen's argument is premised upon a misunderstanding of which party bore the burden of proof. The State was not required to show Jacobsen had squandered the $55,000 in house sale proceeds and $13,000 in salary. Rather, Jacobsen had the burden to explain where those funds went and why they were unavailable to satisfy his restitution obligation. *See Tupa*, 2005 ND 25, ¶ 14, 691 N.W.2d 579; *Gill*, 2004 ND 137, ¶ 14, 681 N.W.2d 832.

[¶ 13] Jacobsen did not testify at the probation revocation hearing and presented no financial records or other evidence explaining what had happened to the $55,000 house sale proceeds or to the $13,000 he claimed to have earned between August and November. His only challenge to the State's financial evidence was that, because he owned the house jointly with his wife, only half of the sale proceeds was available to him to pay restitution. Even if we presume that only half of the house sale proceeds was available, by Jacobsen's own admission there was more than $40,000 available in proceeds and earnings between August and November. Only $6,000 of that amount was paid toward restitution, and Jacobsen provided no explanation of what happened to the remaining $34,000 during that four-month period. The evidence presented to the district court supports the court's finding that Jacobsen violated the conditions of his probation by willfully failing to pay restitution as ordered by the court.

[¶ 14] Jacobsen also seeks to excuse his failure to pay restitution because he "substantially complied" with the conditions of probation and paid the restitution in full in January 2007, months before the full payment was due. Jacobsen cites no authority for his novel assertion that "substantial compliance" is all that is required of a probationer. Furthermore, we note Jacobsen's additional payments of restitution came only after the petition for revocation had been filed in North Dakota and Jacobsen had been arrested in Florida. These arguments are without merit.

[¶ 15] We conclude the district court's finding that Jacobsen violated the terms of his probation by willfully failing to pay restitution as ordered by the court is not clearly erroneous. The district court also found violations of other conditions of probation. Because the State need show only a single violation to sustain revocation of probation, it is unnecessary to address Jacobsen's challenges to the court's findings of other violations. *See Hoff v. Fitterer,* 2005 ND 186, ¶ 9, 705 N.W.2d 807 ("An appellate court need not address questions, the answers to which are unnecessary to the determination of an appeal.").

IV

[¶ 16] The second prong of our probation revocation analysis requires that we consider whether the court abused its discretion when it decided that revocation of probation was warranted. Jacobsen contends the district court abused its discretion when it revoked his probation and sentenced him to a term of imprisonment because, under *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), the court was required to inquire into the reason for his failure to pay restitution and to consider alternative measures of punishment other than imprisonment.

[¶ 17] The question presented in *Bearden,* as framed by the Supreme Court, was "whether a sentencing court can revoke a defendant's probation for failure to pay the imposed fine and restitution, absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate." *Bearden,* 461 U.S. at 665, 103 S.Ct. 2064. The Court held:

"We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the

probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment."

*Id.* at 672–73, 103 S.Ct. 2064.

[¶ 18] Jacobsen's reliance upon *Bearden* is misplaced. The record demonstrates the district court followed the dictates of *Bearden* and considered whether Jacobsen had the means to pay the ordered restitution. The State presented evidence indicating Jacobsen had received sums of money sufficient to pay the October and November restitution payments when due. Jacobsen failed to rebut that evidence, or otherwise explain the disposition of those funds, despite ample opportunity to do so at the hearing. The court accordingly found Jacobsen willfully failed to pay restitution as ordered by the court notwithstanding his ability to do so. We have upheld that finding on appeal.

[¶ 19] When the defendant can, but willfully fails to pay, there is no requirement that alternative forms of punishment be considered and the court may revoke probation and sentence the defendant to imprisonment. *Id.* As the *Bearden* Court noted:

"If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense."

*Id.* at 668, 103 S.Ct. 2064 (citation omitted).

[¶ 20] Furthermore, *Bearden* is inapplicable under the facts in this case. In *State v. Nordahl*, 2004 ND 106, 680 N.W.2d 247, this Court held that *Bearden* does not apply when restitution is ordered as part of a plea agreement. The Court in *Nordahl* relied upon cases which had refused to extend the holding in *Bearden* to cases in which the defendant had agreed to pay restitution as part of a plea agreement, as opposed to restitution ordered upon the court's own initiative. *See Nordahl*, at ¶¶ 20–25. This Court quoted with approval the rationale of the United States Army Court of Military Review, distinguishing between restitution in a plea agreement and restitution imposed through sentencing:

"To allow an accused to offer an agreement with a sentence limitation based on restitution being made and then allow him to take advantage of this limitation when restitution is not made is a windfall this court will not permit. Although the Supreme Court has disallowed confinement or an increase in confinement when restitution was not made, those cases are distinguishable from the case before us. Those cases dealt with restitution and increased confinement as part of the adjudged sentence, something over which the defendants had no control."

*Nordahl,* at ¶ 25 (quoting *United States v. Foust,* 25 M.J. 647, 649 (A.C.M.R.1987)).

[¶ 21] The Court in *Nordahl,* at ¶ 26, thus concluded *Bearden* did not apply when restitution was based upon a plea agreement:

> "In this case, Nordahl had control over the plea agreement and its contents. The severity of Nordahl's offense was lessened from a felony to a misdemeanor based on his agreement to quickly repay the victims. Nordahl's reliance on the *Bearden* case is misplaced because allowing a defendant to avoid restitution by subsequently pleading indigency after entering into a valid plea agreement would cause a windfall to the defendant as characterized by the *Foust* court."

[¶ 22] We conclude the district court did not abuse its discretion when it revoked Jacobsen's probation and sentenced him to a term of imprisonment.

## V

[¶ 23] We affirm the district court order revoking Jacobsen's deferred imposition of sentence and probation and sentencing him to serve seven months and eight days with the North Dakota Department of Corrections.

[¶ 24] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.