*2008 ND 80*

**Ronald WARD, Ron Stensgard, and Duane Dumas, Plaintiffs and Appellants**

v.

**James R. BULLIS, Defendant and Appellee**

**Bruce Hager, ProEquities, Inc., and Michael Volk, Defendants.**

No. 20070188.

Supreme Court of North Dakota.

April 25, 2008.

Benjamin J. Hasbrouck (argued) and Todd E. Zimmerman (on brief), Dorsey & Whitney, Fargo, N.D., for plaintiffs and appellants.

Steven J. Lies, Lies & Bullis, Wahpeton, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Ronald Ward, Ron Stensgard, and Duane Dumas ("plaintiffs") appeal from a summary judgment dismissing their lawsuit against James Bullis for state securities law violations and fraud claims. The plaintiffs claim they suffered damages as a result of misrepresentations in connection with the sale of securities. We reverse the dismissal of the plaintiffs' Securities Act claims because we conclude there is a genuine issue of material fact about whether Bullis is an agent and is liable for violations of the Securities Act, but affirm the dismissal of plaintiffs' common law fraud claims.

I

[¶ 2] In 1998, Intellisol, Inc., a technology company, hired Michael Volk. Volk was granted an option to purchase Intellisol stock as part of his employment agreement. In 2000, Volk hired Bullis, an attorney licensed to practice in North Dakota, to help him exercise the option because Volk did not have funds available to purchase the stock. Bullis advised Volk he could raise money to exercise the option by purchasing stock at the option price and then selling some of the stock to other investors at a higher price.

[¶ 3] Bullis set up a limited liability company, Softech Venture Group, LLC, to act as a holding company of Intellisol stock and to raise money to fund the stock purchase. Bullis eventually set up two more limited liability companies, Softech Venture Group Series B, LLC, and Softech Venture Group Series C, LLC, with the same purpose and to allow for more investors. Investors in the Softechs became part-owners of a company that owned Intellisol stock. The Softechs did not have any other assets. The Softech membership units were sold for a higher price than the option price for Intellisol stock, and the value of a Softech membership unit was equivalent to the value of an Intellisol share. The Softechs did not have any employees, offices, or bank accounts; all the investment funds received were deposited in and disbursed through Bullis's law firm trust account; and investment documents identified the Softechs' address as that of Bullis's law office.

[¶ 4] Bullis also set up two other limited liability companies, HiTech Ventures, LLC, and Midwest Technology Investment Group, LLC, to act as holding companies for Volk's stock. Volk exercised his option to purchase Intellisol stock through these two companies, and a majority of the stock purchased was subsequently transferred to the Softechs. The Intellisol stock and Softech membership units were not registered under the North Dakota Securities Act.

[¶ 5] Bruce Hager, a Fargo stock broker and a registered representative of ProEquities, Inc., was hired to find potential investors. Hager initially solicited the investors, including the plaintiffs, but payment for the Softech membership units was made to Bullis's law firm, and Bullis issued the shares or units. Hager and Bullis each received 5% of the gross Softech sales and 5,000 shares of Intellisol stock. Bullis also received a flat or hourly fee for his legal work. There was evidence Hager received $129,469 in commission for his role in the sale of the Softech securities. The exact amount Bullis received is disputed, but there is evidence Bullis received payments on the same days and in

amounts identical to Hager's payments, except on a few occasions when Bullis received a greater amount. Bullis disbursed the payments to Hager and himself from the funds in his firm's trust account. Volk testified in a deposition that he did not control or approve the disbursement of funds from the account. The Softech subscription agreements stated the subscription was not effective and purchase of the membership interest was not complete until the company accepts, which was in the company's discretion, and the agreement stated Volk's signature as President of the Softechs was evidence of the acceptance. Volk did not sign the agreements, and there is evidence Bullis accepted the agreements without getting Volk's approval.

[¶ 6] In 2000, the plaintiffs invested in the Softechs. Stensgard invested $100,000 in Softech Venture Group. Dumas invested $95,500 in Softech Venture Group. Ward invested $133,800 in Softech Venture Group Series C. All three plaintiffs completed prospective investor questionnaires, which stated the membership interests would only be sold to individuals who were accredited investors and required the investor to verify that he is an accredited investor. An individual qualified as an accredited investor if he had an individual annual income of more than $200,000, or with his spouse had a joint annual income of more than $300,000, or had an individual or joint net worth of more than $1,000,000. The plaintiffs also completed a subscription agreement, which also required the investor verify that he is an accredited investor. All three plaintiffs verified that they were accredited investors, although Ward and Dumas did not meet the requirements. There is some dispute about why the plaintiffs verified they were accredited investors. The plaintiffs allege Hager or Bullis or both told Ward and Dumas it did not matter that they were

not accredited investors and to certify that they were accredited investors. Bullis sent the plaintiffs certificates for the Softech membership units they purchased.

[¶ 7] In 2002, Intellisol ceased operations and the Softechs' Intellisol stock became worthless. The plaintiffs suffered a total loss of their investments.

[¶ 8] In June 2002, the plaintiffs sued Bullis, Hager, ProEquities, Inc., and Volk for violations of state securities law, fraud, and other claims related to the securities they purchased. The plaintiffs claimed the securities transactions violated the Securities Act, N.D.C.C. ch. 10–04, because the securities were not registered or exempt from registration under N.D.C.C. § 10–04–04, the securities were sold through an unregistered securities "dealer" or "agent" in violation of N.D.C.C. § 10–04–10, and the sales violated anti-fraud provisions of N.D.C.C. § 10–04–15. The plaintiffs also alleged common law fraud claims.

[¶ 9] Hager and ProEquities settled with the plaintiffs. Volk failed to answer in the case, and the court found he was in default and entered judgment against him.

[¶ 10] Plaintiffs moved for partial summary judgment against Bullis, alleging there were no genuine issues of material fact that N.D.C.C. ch. 10–04 was violated and Bullis is liable for damages. The plaintiffs agreed to dismiss their fraud claims if their motion for summary judgment was granted.

[¶ 11] Bullis also moved for summary judgment, claiming he was only performing as an attorney involved in securities work and the plaintiffs are unable to provide any evidence that his action caused them to invest or to lose their investment.

[¶ 12] The district court granted Bullis's motion for summary judgment and denied the plaintiffs' motion in its entirety.

The court decided the plaintiffs did not raise any genuine issues of material fact about their fraud claims. The court ruled Bullis did not personally violate N.D.C.C. ch. 10–04 by offering for sale or selling securities in violation of the Securities Act. The court also concluded Bullis was not liable as an agent under N.D.C.C. § 10–04–17 because he did not effect or attempt to effect purchases or sales of securities and the plaintiffs did not raise a genuine issue of material fact under which Bullis would qualify as an agent. The court concluded there were no genuine issues of material fact to indicate that Bullis is liable under N.D.C.C. ch. 10–04.

[¶ 13] The district court had subject matter jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The plaintiffs' appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 14] Summary judgment is appropriate when either party is entitled to judgment as a matter of law, and no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or resolving the factual disputes would not alter the result. *Luallin v. Koehler*, 2002 ND 80, ¶ 7, 644 N.W.2d 591. "[A] court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from that evidence to determine whether summary judgment is appropriate." *Hurt v. Freeland*, 1999 ND 12, ¶ 8, 589 N.W.2d 551. On appeal, this Court decides whether there are genuine issues of fact and whether the district court correctly applied the law. *Luallin*, at ¶ 7. Questions of law are fully reviewable. *Id.* The evidence is viewed in a light most favorable to the opposing party, and the opposing party must be given the benefit of all favorable inferences. *Hurt*, at ¶ 7. The party opposing the motion may not rely upon the pleadings or unsupported, conclusory allegations, but must present competent admissible evidence by affidavit or other means that raises an issue of material fact, and must draw the court's attention to relevant evidence in the record that raises an issue of material fact. *Id.* at ¶ 8. " 'Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.' " *In re Estate of Richmond*, 2005 ND 145, ¶ 12, 701 N.W.2d 897 (quoting *Zuger v. State*, 2004 ND 16, ¶ 7, 673 N.W.2d 615).

## A

[¶ 15] The plaintiffs claim the district court improperly dismissed their claims under the Securities Act, because the Securities Act's registration and anti-fraud provisions were violated and Bullis is liable because he is an agent of the seller who participated or aided in the sale.

[¶ 16] Section 10–04–17(1), N.D.C.C., lists the remedies available when any provision of the Securities Act is violated and imposes joint and several liability on a seller and on a seller's agent who participates or aids in a sale in violation of the Act:

> Every sale or contract for sale made in violation of any of the provisions of this chapter, or of any rule or order issued by the commissioner under any provisions of this chapter, shall be voidable at the election of the purchaser. The person making such sale or contract for sale, and every director, officer, or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser who may

sue either at law or in equity to recover the full amount paid by such purchaser,....

Section 10–04–02(1), N.D.C.C., defines agent as "an individual, other than a broker-dealer, who represents a broker-dealer or an issuer or is self-employed in effecting or attempting to effect purchases or sales of securities."

[¶ 17] Relying on 1999 amendments to N.D.C.C. ch. 10–14, the plaintiffs argue the word "agent" in N.D.C.C. § 10–04–17 is not limited by the statutory definition of agent, but also includes common law agents. The plaintiffs argue common law agents are included under the current version of the statute because the 1999 amendments were not substantive, the statute previously included common law agents, and the amendments were not intended to narrow the scope of investor remedies. The plaintiffs also claim the statutory definition of agent does not apply to N.D.C.C. § 10–04–07, because it cannot be sensibly read into N.D.C.C. § 10–04–07 and the context and subject matter of the statute require using the common law definition of agent. The plaintiffs argue the statutory definition of agent cannot be sensibly read into N.D.C.C. § 10–04–17(1), because that statute imposes liability on anyone who participated or aided in any way, and if liability is limited to those who effected or attempted to effect a sale, the scope of the statute will be narrowed and the words "participated or aided in any way" will be effectively struck from the statute.

[¶ 18] In interpreting a statute, we first look to the language of the statute. *Amerada Hess Corp. v. State ex rel. Tax Comm'r*, 2005 ND 155, ¶ 12, 704 N.W.2d 8. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless specifically defined in the code. N.D.C.C. § 1–02–02. Stat-

utes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–09.1. "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05.

"A statute is ambiguous if it is susceptible to meanings that are different, but rational." This Court "presume[s] the Legislature did not intend an absurd or ludicrous result or unjust consequences," and "construe[s] statutes in a practical manner and give[s] consideration to the context of the statutes and the purposes for which they were enacted."

*Amerada Hess*, at ¶ 12 (citations omitted).

[¶ 19] "[T]here is no common law in any case where the law is declared by the code." N.D.C.C. § 1–01–06. Section 10–04–02, N.D.C.C., states the definitions in that section, including the definition of agent, are to be used in this chapter, "unless the context or subject matter otherwise requires[.]" We conclude the language of N.D.C.C. ch. 10–04 clearly and unambiguously defines agent in language that is applicable to N.D.C.C. § 10–04–17, and therefore an individual must meet the statutory definition of agent to be held liable as an agent for violations of the Securities Act. We hold Bullis is liable for sales or contracts for sales made in violation of the Securities Act if he meets the statutory definition of an agent and he participated or aided in any way in the sale of the securities. *See Luallin*, 2002 ND 80, ¶ 21, 644 N.W.2d 591.

[¶ 20] This Court has not addressed whether an attorney may be liable for violations of securities laws, but other courts, applying similar statutory definitions of an agent, have considered similar arguments and held an attorney is not liable as an agent unless the attorney:

act[s] in a manner that goes beyond legal representation. The definition of "agent" ... does not include attorneys who merely provide legal services, draft documents for use in the purchase or sale of securities, or engage in their profession's traditional advisory functions. To rise to the level of "effecting" the purchase or sale of securities, the attorney must actively assist in offering securities for sale, solicit offers to buy, or actually perform the sale.

*Baker, Watts & Co. v. Miles & Stockbridge,* 95 Md.App. 145, 620 A.2d 356, 368 (1993).

[¶ 21] In *Excalibur Oil, Inc. v. Sullivan,* 616 F.Supp. 458, 460 (N.D.Ill.1985), an attorney was hired to prepare title opinions for an investment in oil and gas wells and was informed the investment would not occur without an assurance that the property leases were unencumbered. The plaintiffs alleged the attorney failed to prepare the title opinions, but incorrectly assured the investor that the leases were unencumbered. *Id.* at 460–61. Under the applicable West Virginia securities laws, an agent is liable if the agent materially aids in the sale, and an agent is an individual other than a broker-dealer who represents the broker-dealer or issuer in effecting or attempting to effect the purchase or sale of securities. *Id.* at 467. The court denied the attorney's motion for dismissal for failure to state a claim, concluding the attorney could be liable as an agent because the plaintiffs alleged the attorney made face-to-face and direct telephonic representations to the buyer that materially aided in effecting the sale. *Id.*

[¶ 22] In *Rendler v. Markos,* 154 Wis.2d 420, 453 N.W.2d 202 (Ct.App.1990), investors in fourteen limited partnerships sued an attorney and his law firm for securities law violations. The attorney represented the promoters of the limited partnerships, advised the promoters on the need for securities registration, and drew up documents used by promoters to sell the limited partnership interests. *Id.* at 206. Under Wisconsin securities laws, an agent who materially aids in the act or transaction constituting the violation is liable for the violation, and an agent is "any individual other than a broker-dealer who represents a broker-dealer or issuer in effecting or attempting to effect transactions in securities." *Id.* The court concluded the attorney was not liable because:

The definition of "agent" in [Wisconsin securities law] does not include attorneys who merely render legal advice or draft documents for use in securities transactions. The definition covers persons who assist directly in offering securities for sale, soliciting offers to buy, or performing the sale, but who do not fit the definition of broker-dealer. It is not intended to cover professionals such as attorneys engaging in their traditional advisory functions.

*Id.* The court concluded the complaint failed to state a claim and the attorney was not liable for violations of state securities laws because there were no allegations the attorney did anything other than provide legal services. *Id.* at 207.

[¶ 23] In *CFT Seaside Inv. Ltd. P'ship v. Hammet,* 868 F.Supp. 836 (D.S.C.1994), investors sued an attorney who provided legal services in a real estate investment project, alleging violations of South Carolina securities law. The attorney provided legal services on matters concerning real estate law and developmental approval issues, including providing an opinion letter to the investors and an updated memorandum, which was completed at the investors' request on the eve of the investment. *Id.* at 839. Under South Carolina securities laws, every agent who materially aids in the sale of securities that violates

securities laws is liable, and an agent is "any individual, other than a broker-dealer, who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities...." *Id.* at 843–44. The court said the attorney was not liable as an agent, because the definition of an agent "does not include attorneys who merely render legal advice or draft documents for use in securities transactions." *Id.* at 844. The court said the definition of an agent is not intended to cover attorneys engaging in their traditional advisory functions, rather it is intended to cover individuals who assist directly in offering securities for sale, solicit offers to buy, or perform the sale, but who do not fit the definition of a broker-dealer. *Id.*

[¶ 24] In *Johnson v. Colip*, 658 N.E.2d 575 (Ind.1995), an attorney was retained to incorporate and represent a corporation established to serve as a general partner in several limited partnerships and draft a prospectus used to solicit investors in the partnership. The attorney also attended meetings of prospective investors. *Id.* at 578. The plaintiffs claimed the prospectus contained misleading and untrue statements of material fact, or omitted material facts. *Id.* at 575. The Indiana Securities Act provides a private cause of action against every agent of a seller who materially aids in the sale or purchase, and defines agent as "[a]ny individual, other than a broker-dealer, who represents a broker-dealer or issuer in effecting or attempting to effect purchasers [sic] or sales of securities." *Id.* at 576. The Indiana Supreme Court held there was a material issue of fact about whether an attorney's conduct at the meetings with prospective investors constituted an attempt to effect the sale of securities by making it more likely than not that investors would purchase the securities, and therefore summary judgment was not appropriate. *Id.* at 579.

[¶ 25] We agree with the approaches taken by the courts in these cases. We hold that an attorney may be liable for violations of the Securities Act if he is an agent representing the broker-dealer, issuer, or is self-employed and effects or attempts to effect the purchase or sale of securities, and he participates or aids in any way in the sale or contract for sale made in violation of the Securities Act. An attorney who merely provides legal services, drafts documents used in the purchase or sale of the security, or engages in the legal profession's traditional advisory functions is not an agent within the meaning of N.D.C.C. § 10–04–02(1). To be liable as an agent, the attorney must do more than act as legal counsel, the attorney must actively assist in offering securities for sale, solicit offers to buy, or actually perform the sale. The question of whether an attorney is an agent who aided or participated in any way in the sale is a question of fact unless the evidence is such that reasonable persons can draw only one conclusion from the evidence. *See Weidner v. Engelhart*, 176 N.W.2d 509, 518 (N.D.1970).

[¶ 26] In this case, there is a genuine issue of material fact about whether Bullis's conduct constituted an attempt to effect the purchase or sale of the securities. The plaintiffs claim Bullis planned or assisted in the planning of the investment scheme, hired stockbroker Hager, traveled to Australia and Arizona to assist in purchasing the stock, acted as the "secretary" of at least one of the limited liability companies, drafted the investment documents and was responsible for making sure they were filled out and returned, accepted the investment documents without Volk's signature, received the investment funds into his firm's trust account and disbursed the funds, received 5% of the sales in addition

to a flat or hourly fee for his legal services, issued the investors' shares or units, and advised Ward that he was an "accredited investor" when Ward questioned whether he could purchase the stock because he was not an accredited investor. Ward also testified in his deposition that he talked to Bullis about the price of the stock and whether he could get a better price. While Bullis did not initially solicit the plaintiffs' purchases of the securities, there was evidence that, if believed, established his role in the investment scheme was more than that of an attorney who merely provided legal services and drafted documents. We conclude that whether Bullis's conduct constituted an attempt to effect the sale of the securities is a genuine issue of material fact, and therefore summary judgment was not appropriate.

### B

[¶ 27] The plaintiffs claim the district court erred in granting Bullis summary judgment on their fraud claims because Bullis is liable for fraud under an acting-in-concert theory. The plaintiffs alleged and provided evidence that the solicitations were induced through false statements of material fact and material omissions. The plaintiffs claim Dumas was told his investment was in Intellisol, Hager had inside information and said Intellisol was performing well and doing well financially, the investment would increase in value three or four times or as much as nine or ten times, the risk was minimal, Hager was investing a "ton of money," and Dumas should certify that he was an accredited investor even though he was not. The plaintiffs claim Stensgard was told his investment was in Intellisol, within six to eight months he would receive a return of at least three or four times his investment, Intellisol was a safe investment, Hager was investing $200,000, and Stensgard's request to see Intellisol's

financial records was denied because he was told they contained inside information. The plaintiffs claim Ward was told his investment was in Intellisol, the investment would triple in value in a very short period of time and could increase in value by ten times, Intellisol would be bought out or conduct an initial public offering soon, and he should certify that he was an accredited investor even though he told Hager, Volk, and Bullis that he was not. The plaintiffs also claim, and there was evidence, Intellisol lost over $7 million in 2000, it was a risky investment, and the company needed venture capital from high risk, institutional investors to continue operating. The plaintiffs admit the only fraudulent statement Bullis made to any of the plaintiffs was his statement to Ward that he was an accredited investor, even though Ward was not. They concede that Hager made all the other fraudulent statements and omissions, but argue Bullis is liable because he was acting in concert with Hager and Volk. The plaintiffs also claim Bullis is liable for fraud under the Securities Act because there was a violation of N.D.C.C. § 10–04–15, Bullis was an agent under N.D.C.C. § 10–04–17, and therefore he is liable for any violations of the act.

[¶ 28] The district court improperly granted summary judgment on the plaintiffs' fraud claims under N.D.C.C. ch. 10–04. There is a fact issue about whether Bullis is an agent and can be held liable for violations of the Securities Act. Whether Bullis personally violated N.D.C.C. § 10–04–15 does not matter. Section 10–04–17, N.D.C.C., states if there is a violation of any provision of the act, "[t]he person making such sale or contract for sale, and every director, officer, or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser who may sue either at law or in

equity to recover the full amount paid by such purchaser,...." If Hager violated N.D.C.C. § 10–04–15 by making fraudulent statements and omitting material information in connection with the offer, sale, or purchase of the securities, and Bullis is an agent, Bullis is liable for the violation under N.D.C.C. § 10–04–17. Whether Bullis is an agent is a genuine issue of material fact, and summary judgment on the plaintiffs' fraud claims under N.D.C.C. § 10–04–15 was not appropriate.

[¶ 29]   However, the plaintiffs failed to provide any evidence that Bullis is liable under a common law fraud theory, because there was no evidence Bullis either made fraudulent statements or was acting in concert. While N.D.C.C. § 1–01–06 states that "there is no common law in any case where the law is declared by the code," N.D.C.C. § 10–04–17(4) provides that "[n]othing in this chapter shall limit any statutory or common-law right of any person in any court for any act involved in the sale of securities." This Court has recognized the Securities Act does not limit a person's common law rights for any act involved in the sale of securities. *Adams v. Little Missouri Minerals Ass'n, Inc.*, 143 N.W.2d 659 (N.D.1966); *Weidner*, 176 N.W.2d at 513. However, to support a claim of common law fraud, we have said the acts must support actionable fraud without the assistance of the N.D.C.C. § 10–04–15:

> To support an action for recovery based on the general statutory or common-law fraud, the acts must be such as would support actionable fraud in and of themselves without the assistance of Section 10–04–15, N.D.C.C. The acts may also be violations of the Securities Act but they must be such acts that, by themselves, constitute actionable fraud.

*Weidner*, 176 N.W.2d at 513.

[¶ 30]   While fraud actions are not generally suited for disposition by summary judgment, fraud must be proven by clear and convincing evidence, and "the actual quantum and quality of proof necessary to support liability must be considered in determining whether a genuine factual issue as to fraud exists." *Richmond*, 2005 ND 145, ¶¶ 12–13, 701 N.W.2d 897. Actual fraud is defined in N.D.C.C. § 9–03–08. "[A]ny persons who act in concert in committing a tortious act or aid or encourage the act, or ratifies or adopts the act for their benefit, are jointly liable for all damages attributable to their combined percentage of fault." N.D.C.C. § 32–03.2–02. This Court has said "N.D.C.C. § 32–03.2–02 does not create an independent basis of liability, rather it deals with the allocation of damages among those already at fault." *Hurt*, 1999 ND 12, ¶ 21, 589 N.W.2d 551. However, to find concerted action, other jurisdictions have followed the Restatement (Second) of Torts § 876, which states a person is subject to liability for another's tortious conduct if he:

> (a) does a tortious act in concert with the other or pursuant to a common design with him,
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*See also Hurt*, at ¶ 22. We have said, "the doctrine [of § 876] appears to be reserved for application to facts which manifest *a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result* ...." *Id.* at ¶ 23 (quoting *Olson v. Ische*, 343 N.W.2d 284, 288 (Minn.1984)).

[¶ 31]   To constitute a concerted action, the plaintiffs needed to present evidence of

a common plan to commit a tortious act, the participants knew of the plan and its purpose, and the participants took substantial affirmative steps to encourage the achievement of the result. *See Schneider v. Schaaf,* 1999 ND 235, ¶ 23, 603 N.W.2d 869. The plaintiffs failed to present any evidence to raise a genuine issue of material fact that there was a common plan to commit fraud or that Bullis knew Hager was making fraudulent statements and omitting material information in soliciting investors.

[¶ 32] We conclude the district court properly granted summary judgment dismissing the plaintiffs' common law fraud claims, but did not properly grant summary judgment on the plaintiffs' fraud claims under N.D.C.C. § 10–04–15. We remand for trial of the plaintiffs' claims for violations of the Securities' Act.

### III

[¶ 33] We conclude there is a genuine issue of material fact and the district court improperly granted summary judgment on the plaintiffs' Securities Act claims. We affirm the district court's dismissal of plaintiffs' common law fraud claims. We reverse the district court's judgment and remand for further proceedings consistent with this opinion.

[¶ 34] GERALD W. VANDE WALLE, C.J., DONOVAN J. FOUGHTY, D.J., SONNA M. ANDERSON, D.J., and MARY MUEHLEN MARING, JJ., concur.

[¶ 35] The Honorable SONNA M. ANDERSON, D.J., and the Honorable DONOVAN JOHN FOUGHTY, D.J., sitting in place of KAPSNER, J. and CROTHERS, J., disqualified.