2010 ND 217

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Bruce A. HAGER, Defendant and Appellant.**

**No. 20100090.**

Supreme Court of North Dakota.

Nov. 9, 2010.

Cherie LaVonne Clark (argued), Assistant State's Attorney, Fargo, N.D., and Michael Francis Daley (argued), Special Assistant Attorney General, Bismarck, N.D., for plaintiff and appellee.

Daniel James Frisk (argued) and Steven M. Light (on brief), Fargo, N.D., and Arly Richau (appeared), Scottsdale, AZ, for defendant and appellant.

Gary R. Wolberg (on brief), and Petra H. Mandigo Hulm (on brief), Bismarck, N.D., and Joseph V. Brady, NASAA, Washington, D.C., for amicus curiae North American Securities Administrators Association, Inc.

KAPSNER, Justice.

[¶ 1] Bruce Hager appeals from a district court order revoking his probation. Hager argues the district court erred in finding he violated the conditions of his probation by committing the criminal offense of acting as an unregistered agent. We affirm.

## I

[¶ 2] In December 2007, Hager plead guilty to four counts of selling unregistered securities, a class B felony, and four counts of acting as an unregistered agent, a class B felony. Hager was sentenced to one year of incarceration. Six months of his sentence was suspended for a period of ten years, and he was permitted to serve the balance of the sentence on electronic home monitoring. The court also ordered ten years of supervised probation. The court ordered the standard probation conditions, including that Hager not commit any further criminal offenses and that he not possess firearms.

[¶ 3] While Hager was on electronic home monitoring and probation, he worked for and rented office space to RAHFCO Management Group, LLC. RAHFCO issues securities that meet the requirements for exemption from federal registration under 17 C.F.R. § 230.506, which is also known as Rule 506 or Regulation D exemption. Hager owns one percent of the "member units" of RAHFCO.

[¶ 4] In November 2008, Hager's probation officer filed a petition for revocation of Hager's probation, and an amended petition was filed in March 2009. The amended petition alleged twenty-five violations, including possession of firearms, unlawfully acting as an unregistered agent, and committing the criminal offense of securities fraud.

[¶ 5] During a November 16, 2009, revocation hearing, Hager admitted he possessed firearms in violation of the conditions of his probation and the securities fraud allegation was dismissed. Hager denied the other allegations and argued he was not engaged in any activity that would require him to register as an agent. The court found Hager possessed firearms and unlawfully acted as an unregistered agent in violation of the conditions of his proba-

tion. The court revoked Hager's probation. After a hearing, the court resentenced Hager to thirty months in prison for eight of the violations with the sentences for each violation running concurrently.

## II

[¶ 6] When we review a district court's decision to revoke probation, we apply a two-step analysis:

First, we review the district court's factual finding of a probation violation under the clearly erroneous standard. A finding of fact is clearly erroneous when it is induced by an erroneous view of the law, when there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, the court is left with a definite and firm conviction that a mistake has been made. Second, we determine whether the district court abused its discretion when it decided that revocation of probation was warranted. A district court abuses its discretion when it acts in an arbitrary, unreasonable, unconscionable, or capricious manner, or if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law.

*State v. Jacobsen*, 2008 ND 52, ¶ 8, 746 N.W.2d 405 (quotations and citations omitted).

### A

[¶ 7] The State claims it is unnecessary to address Hager's challenges to the district court's findings about the violations for unlawfully acting as an unregistered agent because a single violation is sufficient to sustain revocation of probation and Hager admitted he violated the conditions of his probation by possessing firearms.

[¶ 8] We have said "the State need show only a single violation to sustain revocation of probation," and we do not need to consider whether a court's findings about other violations are clearly erroneous to affirm the court's decision to revoke probation. *Jacobsen*, 2008 ND 52, ¶ 15, 746 N.W.2d 405.

■ [¶ 9] Hager admitted he possessed firearms in violation of the conditions of his probation, and he does not challenge the court's findings about that violation on appeal. However, it is not clear from the record that the court would have resentenced Hager the same way if it had only found the single violation. In the order revoking Hager's probation, the court said:

> One significant violation of the terms of Hager's probation (firearms possession) has been admitted. I have found that multiple additional violations have occurred in a willful manner. Moreover, these violations involved a breach of the same registration requirements that Hager pled guilty to in the underlying proceedings.

During the resentencing hearing the court explained the reasons for its decision to sentence Hager to thirty months of incarceration and focused on the violations for unlawfully acting as an unregistered agent:

> Mr. Hager did deliberately attempt to color things in a manner that would make them appear to be something that they were not . . . . if someone is on probation for a securities violation, or multiple securities violations, the last thing they should be doing is skating on the edge of the law. So I simply cannot accept or excuse any of the conduct at issue.
>
> . . . .
>
> But I think most troubling of all is the simple fact that the new violations are of the exact kind and nature as the original

violations. Clearly, the message was not received. . . . You were given an opportunity to prove that you had learned the lesson. And instead, at least in my estimation, you've proven only the opposite. I am not going to put you back on probation. That ship has sailed. I am reluctantly convinced at this point in time that the only appropriate sanction is a period of incarceration with the Department of Corrections, and I must also agree that that period of incarceration does need to reflect both the serious nature of the violations, and it needs to convey, if not to you, at least to others who might be similarly disposed, that the securities laws of this state are serious. Violations need to be treated as serious. The people who entrust their financial well-being to the people who are selling securities and providing financial advice need to know that they will not be misled. They need to know that the appropriate laws will be followed. We have eight counts, as I understand it, in the original Information that are still in play.

> Mr. Hager, as to Count—and before I go any further, I will tell you, in all candor, that I came into the courtroom today intending to impose a sentence that was even more severe than what the State has recommended.

■ [¶ 10] A court has discretion in deciding whether to revoke an individual's probation and sentence the individual to imprisonment. *Jacobsen*, 2008 ND 52, ¶ 8, 746 N.W.2d 405 (district court has discretion in deciding that revocation of probation is warranted); *State v. Ennis*, 464 N.W.2d 378, 382 (N.D.1990) (a trial court has discretion in sentencing a defendant). Because the record reflects the court did consider the violations for acting as an unregistered agent in its resentencing decision, we must consider Hager's argument

that the court erred in finding he violated his probation by unlawfully acting as an unregistered agent.

B

[¶ 11] Hager argues the district court erred in finding he violated the terms of his probation by illegally acting as an unregistered agent. Hager contends the National Securities Markets Improvement Act of 1996 ("NSMIA") preempts state securities laws and exempts "issuers" from state registration requirements when the issuer's securities meet the requirements for exemption under Rule 506. Hager argues the individual "persons" of an issuer are also included within the definition of "issuer" under federal law, and therefore the employees, owners, officers and directors of the issuing corporation are also "issuers." Hager argues he is not required to register as an agent under N.D.C.C. § 10–04–10(2) because as part owner of the issuer he is an "issuer" and is exempt from registration.

[¶ 12] Under the Supremacy Clause, U.S. Const. art. VI, federal law is "the supreme law of the land" and conflicting state laws are without effect. *State ex rel. Stenehjem v. Simple.net, Inc.,* 2009 ND 80, ¶ 11, 765 N.W.2d 506. There are three ways federal law may preempt state law: express preemption, where Congress has expressly defined the extent its laws preempt state law; field preemption, where state law is preempted because it regulates conduct in a field that Congress intended the federal government to exclusively occupy; and conflict preemption, where state law is preempted to the extent that it actually conflicts with federal law. *State ex rel. Stenehjem v. FreeEats.com, Inc.,* 2006 ND 84, ¶ 19, 712 N.W.2d 828.

[¶ 13] NSMIA, which is codified in part at 15 U.S.C.A. § 77r, amended a portion of the 1933 Securities Act. *Brown v. Earthboard Sports USA, Inc.,* 481 F.3d 901, 909 (6th Cir.2007). The primary purpose of NSMIA "was to preempt state 'Blue Sky' laws which required issuers to register many securities with state authorities prior to marketing in the state." *Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 108 (2d Cir.2001). NSMIA was passed "to preclude states from requiring issuers to register or qualify certain securities with state authorities." *Id.* Under NSMIA, a "covered security" is exempt from state registration requirements. 15 U.S.C.A. § 77r. A security exempt from federal registration under 17 C.F.R. § 230.506 is a "covered security" and is exempt from state registration requirements. 15 U.S.C.A. § 77r(b); *see also Brown,* at 905–06 (filing for a federal registration exemption under Rule 506 is generally intended to exempt the securities sale from federal and state registration requirements under NSMIA); *Risdall v. Brown–Wilbert, Inc.,* 753 N.W.2d 723, 728–29 (Minn.2008).

[¶ 14] NSMIA regulates the registration of securities and preempts state securities laws that require the registration of "covered securities." NSMIA does not preempt state laws that require registration of individuals involved in the sale of securities. The preliminary notes of the Code of Federal Regulations for Regulation D support this interpretation:

Nothing in these rules obviates the need to comply with any applicable state law relating to the offer and sale of securities. Regulation D is intended to be a basic element in a uniform system of federal-state limited offering exemptions consistent with the provisions of sections 18 and 19(c) of the [Securities Act of 1933 (15 U.S.C. 77a et seq.) ]. In those states that have adopted Regulation D, or any version of Regulation D,

special attention should be directed to the applicable state laws and regulations, including those relating to registration of person who receive remuneration in connection with the offer and sale of securities, to disqualification of issuers and other persons associated with offerings based on state administrative orders or judgments, and to requirements for filings of notices of sales.

17 C.F.R. ch. II, pt. 230, preliminary notes. Although Hager contends an "issuer" that meets the requirements under Rule 506 is exempt from registration under federal law, only a security that meets the requirements for exemption under Rule 506 is exempt from state registration requirements. Federal law does not preempt state securities laws requiring the registration of a person who is involved in the offer or sale of securities.

 [¶ 15] Furthermore, Hager is not an "issuer." An "issuer" for purposes of the North Dakota Securities Act, N.D.C.C. ch. 10–04, is "every person who issues or proposes to issue any security." N.D.C.C. § 10–04–02(12). "Issuer" is similarly defined under federal securities law. See 15 U.S.C.A. § 77b(a)(4).

 [¶ 16] The interpretation of a statute is a question of law, which is fully reviewable on appeal. Ackre v. Chapman & Chapman, P.C., 2010 ND 167, ¶ 10, 788 N.W.2d 344. Our primary objective in interpreting a statute is to determine the legislature's intent. Id. We first look to the language of the statute to ascertain the legislature's intent. Ward v. Bullis, 2008 ND 80, ¶ 18, 748 N.W.2d 397. We give words their plain, ordinary, and commonly understood meaning, unless a word is specifically defined. N.D.C.C. § 1–02–02; see also Ward, at ¶ 18. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05.

A statute is ambiguous if it is susceptible to meanings that are different, but rational. This Court presume[s] the Legislature did not intend an absurd or ludicrous result or unjust consequences, and construe[s] statutes in a practical manner and give[s] consideration to the context of the statutes and the purposes for which they were enacted.

Ward, at ¶ 18 (quoting Amerada Hess Corp. v. State ex rel. Tax Comm'r, 2005 ND 155, ¶ 12, 704 N.W.2d 8) (citations and quotations omitted).

[¶ 17] The plain language of the state and federal statutes define an issuer as a person who issues or proposes to issue any security. For purposes of the North Dakota Securities Act, a person is "an individual, a corporation, a limited liability company, a partnership, an association, a joint venture, a trust, a government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity." N.D.C.C. § 10–04–02(14). The definition under federal law is similar. 15 U.S.C.A. § 77b(a)(2). An "issuer" is the person or entity that issues or proposes to issue a security, and generally does not include all of the employees or those individuals who own a minority interest in the entity issuing the security. Cf. United States v. Rachal, 473 F.2d 1338, 1342 (5th Cir.1973) (high-level corporate officers, who controlled the corporation, were properly convicted of the sale of unregistered securities, either as "issuers" or aiders and abettors to commission of offense by issuer); Securities & Exch. Comm'n v. National Bankers Life Ins. Co., 324 F.Supp. 189, 194 (N.D.Tex.1971) (for purpose of liability for the sale of specified unregistered securities, an "issuer" includes the company issuing the security and control persons of that company); 15 U.S.C.A.

§ 77b(a)(11) (as used in the definition of "underwriter" the term "issuer" includes, in addition to the issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer).

[¶ 18] Here, RAHFCO issued the securities, and therefore is the issuer. Hager owns one percent of RAHFCO's membership units and is an employee. The district court found Hager played a limited role in the organization and there was no evidence "Hager ever provided services beyond those traditionally performed by individuals engaged in a sales capacity." The court also found "Hager's contributions were limited to providing an office space that could be used for meetings in North Dakota, and helping to 'introduce' RAHFCO to Hager's 'friends.'" Hager does not argue the court's findings are clearly erroneous. We conclude Hager is not an issuer.

### C

[¶ 19] Hager contends he was not required to register as an agent because only a third-party individual, who is not an employee or owner of the issuer, is an "agent" as defined in N.D.C.C. § 10–04–02(1) for purposes of the Securities Act, N.D.C.C. ch. 10–04. Hager also claims he did not engage in activities that would require him to register as an agent.

[¶ 20] Under N.D.C.C. § 10–04–10(2), "[i]t is unlawful for an individual to transact business in this state as an agent unless the individual is registered under this chapter as an agent or is exempt from registration." An agent is:

an individual, other than a broker-dealer, who represents a broker-dealer or an issuer or is self-employed in effecting or attempting to effect purchases or sales of securities. However, a partner, officer, or director of a broker-dealer, or an individual having a similar status or performing similar functions is an agent only if the individual otherwise comes within the term.

N.D.C.C. § 10–04–02(1). The plain language of the statute unambiguously defines "agent" as an individual who represents the issuer in effecting or attempting to effect the purchase or sale of securities, and does not limit an agent to a third-party individual. Whether an individual is an agent is a question of fact. *Ward,* 2008 ND 80, ¶ 25, 748 N.W.2d 397.

[¶ 21] The district court found Hager was acting as an agent and made specific findings about Hager's actions:

The written contract between Hager and RAHFCO is short on detail, but it begins by reciting that RAHFCO "wishes to maintain a presence in North Dakota" and Hager has "skills and contacts which would be valuable to market" its securities. The first of the "duties" imposed on Hager was to "market" RAHFCO securities to its "[c]ustomers and potential customers," and to "provide a marketing plan to the Board containing specific market segments to be targeted with specific goals and projections."

. . . .

Various lists were prepared, identifying Hager's prospects and describing the nature of his contacts to date with those individuals. One of those lists included a section describing the sales calls Hager "wants to handle personally." The second list identifies individuals who apparently received private placement memorandums between March and October of 2008. The notes suggest that in most instances Hager personally delivered the documents to the prospect. In other instances, the documents were mailed at Hager's direction.

The documents ultimately produced by RAHFCO in response to subpoena establish that Hager's efforts and contacts were indeed of significant value to its marketing efforts. Included is a listing of the securities sold to North Dakota residents. This list indicates that between April 1, 2007 and October 23, 2008, Hager generated or initiated twenty-eight completed transactions, having a combined acquisition cost of $3,047,340.14.

. . . .

On February 11, 2008, Hager responded in writing to concerns about the RAHFCO hedge fund expressed by a potential investor. He went on at length in an attempt to disabuse those concerns. This message concluded with the suggestion that $250,000 be invested, subject to the understanding that if the investment proves to be unsatisfactory for any reason "we'll close the account and return your money."

A final example is the reported solicitation that triggered these revocation proceedings. In the fall of 2008, Hager repeatedly approached a potential investor in Fargo in an attempt to solicit the purchase of RAHFCO securities. In turn, that individual contacted the [North Dakota Securities Department], ultimately forwarding copies of the documents Hager had provided to him. One of those documents charted the historic returns provided by the RAHFCO fund Hager was pushing. The included summary described the offering as "a lower risk investment that should return you 15% to 20% at a minimum over the years." Hager also provided a personalized fund prospectus, limited partnership agreement, and a subscription booklet.

The court found Hager engaged in these activities while he was on electronic home monitoring and while he was on probation.

Based on these findings, the court found Hager effected or attempted to effect the purchase or sale of securities and was acting as an agent. Hager does not challenge the court's findings.

[¶ 22] Hager argues he was not required to register as an agent because he was exempt from registration. An individual, who is an agent as defined in N.D.C.C. § 10–04–02, is exempt from the agent registration requirements if the individual "represents an issuer that effects transactions solely in federal covered securities of the issuer." N.D.C.C. § 10–04–10(2)(c). However, "an individual who effects transactions in a federal covered security under section 18(b)(3) or 18(b)(4)(D) of the Securities Act of 1933 is not exempt if the individual is compensated in connection with the agent's participation by the payment of commissions or other remuneration based, directly or indirectly, on transactions in those securities." Id.

[¶ 23] Hager contends he meets the requirements for the exemption. Although there was evidence Hager received total employment compensation of $15,376.29 in wages from RAHFCO, he claims he was not paid a commission for his work, and therefore is exempt. However, under the plain language of the statute an individual does not qualify for the exemption if he or she is compensated by payment of commission or other remuneration. The district court found Hager was not exempt from registration because he received remuneration. The court found RAHFCO paid Hager rent for the use of his office space, but also paid him monthly amounts, which "can only be regarded as compensation for Hager's sales efforts and contributions." The court found these monthly amounts were remuneration based, directly or indirectly, on transactions in RAHFCO's securities because Hager's sole contribution came in the form

of direct marketing and sales assistance. The court's findings are supported by the evidence and are not clearly erroneous.

### III

[¶ 24] We conclude federal law does not preempt state securities laws requiring the registration of individuals involved in the sale of securities and an individual is required to register as an agent in North Dakota if the individual represents an issuer in effecting or attempting to effect the purchase or sale of securities and is not exempt from registration. We affirm the district court's decision, holding the court's finding that Hager violated the conditions of his probation by unlawfully acting as an unregistered agent is not clearly erroneous and the court did not abuse its discretion when it ordered revocation of Hager's probation.

[¶ 25] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.